[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13304
Non-Argument Calendar
_____

D.C. Docket No. 7:14-cr-00002-HL-TQL-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KATRINA WRIGHT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(May 6, 2015)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Katrina Wright appeals her 96-month sentence of imprisonment for conspiring to commit bank fraud. She argues that the district court erred in the following three ways: (1) applying a four-level aggravating role enhancement under United States Sentencing Guidelines Manual ("U.S.S.G.") § 3B1.1(a); (2) imposing her federal sentence to run consecutively to an undischarged state sentence; and (3) failing to reduce her sentence by seventeen months to account for time served on another state sentence resulting from conduct related to the instant offense. After careful review, we affirm.

**I.**

A federal grand jury indicted Wright and four co-defendants in January 2014 on one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1344 and 1349. Wright pled guilty under a written plea agreement.

The plea agreement included a factual description of the offense, which Wright confirmed was true and accurate at her change-of-plea hearing. Specifically, the agreement indicated that, from July 2009 to November 2011, Wright and four others conspired to and did defraud banks by generating fraudulent and counterfeit checks.

The plea agreement described the scheme as follows: Wright and one other co-conspirator wrongfully acquired the names and bank account numbers of bank customers through various means. Using this personal information, at her home,

Wright printed fraudulent checks in the names or aliases of her co-conspirators, but using the victims' account numbers. Wright then gave the fraudulent checks to her co-conspirators, who would use them to purchase merchandise or services at businesses. The co-conspirators delivered some of the merchandise to Wright, who sold it to others. In total, Wright and her co-conspirators passed fraudulent checks worth over $100,000.

Before her sentencing, a probation officer prepared Wright's presentence investigation report ("PSR"), finding the applicable guideline range to be 77 to 96 months of imprisonment. Notably, in calculating the guideline range, the probation officer applied a four-level aggravating-role enhancement under U.S.S.G. § 3B1.1(a), finding that Wright was an organizer or leader of criminal activity that involved five or more participants.

The PSR also detailed Wright's criminal history. Three of Wright's prior convictions and sentences from Georgia state courts are relevant to this appeal. First, in 2004, Wright was sentenced in Crisp County to a total of two consecutive ten-year terms of probation for uttering forged checks and possessing checks in another's name. Her probation was revoked in 2006, but she was released from custody on "conditional transfer" or parole in 2007. Then, in 2012, her parole was revoked. Her maximum release date is October 2023.

3

Second, in February 2013, Wright was sentenced in Dougherty County to a total ten-year term of imprisonment for identity fraud and forgery related to passing forged checks. The sentence was imposed to run concurrently with her parole revocation from Crisp County.

Third, in October 2013, Wright was sentenced in Ben Hill County to a three-year term of imprisonment for possession of a firearm by a felon. According to the PSR, the sentence was "to run concurrently with any sentence now serving." The firearm was found during a search of her home for evidence of the instant offense.

Wright filed written objections to the PSR. Among others, she objected to the application of the four-level role enhancement under § 3B1.1(a). She also asserted that her federal sentence must run concurrently with the Dougherty County sentence, pursuant to U.S.S.G. §5G1.3(b), because it was based on "relevant conduct." And she requested a downward "departure" under § 5G1.3(b)(1) to account for the time she had spent serving the Dougherty County sentence.[1]

At sentencing, the district court overruled Wright's objection to the application of § 3B1.1(a) after hearing argument from the parties. In so ruling, the

---

[1] Wright also objected that her Ben Hill County conviction should not have been scored in determining her criminal-history category because it was based on "relevant conduct," U.S.S.G. § 1B1.3, and therefore excluded from her criminal history by U.S.S.G. § 4A1.2(a)(1). However, she withdrew this objection at sentencing.

4

court declined to hear testimony from a Secret Service agent present at the sentencing hearing.

The court and the parties also addressed Wright's state sentences and their connection to and effect on the instant federal case. Wright's counsel made clear that Wright was requesting only that her federal sentence run concurrently with her sentence from Dougherty County, because it was relevant conduct based on an overt act in the conspiracy for which she was being sentenced. The government responded that it had no objection to running the federal sentence concurrently with the Dougherty County sentence but consecutively to the Crisp County and Ben Hill County sentences. Asked by the court whether the government's suggestion was "satisfactory," Wright's counsel responded, "Yes, Sir, Your Honor."

Finally, the district court denied Wright's request for a sentence reduction of seventeen months "to achieve full concurrency" between the Dougherty County sentence and the federal sentence.

Ultimately, the district court imposed a 96-month sentence of imprisonment, at the top end of the guideline range. The sentence imposed was to be served consecutively to the sentences from Crisp County and Ben Hill County and concurrently with the Dougherty County sentence.

## II.

Wright first argues that the district court erred in applying the four-level organizer or leader enhancement, U.S.S.G. § 3B1.1(a), without making specific findings of fact. According to Wright, the undisputed record evidence supports application of the three-level increase for a manager or supervisor, U.S.S.G. § 3B1.1(b), only. In particular, Wright points out that she denied recruiting other conspirators, placing any limitations on the negotiation of the fraudulent checks (other than insisting that certain items be purchased for her), or receiving a larger share of the proceeds.

We review for clear error the district court's determination that a defendant is subject to a § 3B1.1(a) role enhancement as an organizer or leader. *United States v. Martinez*, 584 F.3d 1022, 1025 (11th Cir. 2009); *see also United States v. Rodriguez De Varon*, 175 F.3d 930, 937-38 (11th Cir. 1999) (*en banc*) (holding that the determination of a defendant's role in the offense is a finding of fact reviewed only for clear error). A factual finding is clearly erroneous when, in light of the entire record, we are "left with the definite and firm conviction that a mistake has been committed." *United States v. Gupta*, 572 F.3d 878, 887 (11th Cir. 2009) (quotation marks omitted).

Section 3B1.1(a) provides for a four-level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more

6

participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). A three-level enhancement applies "[i]f the defendant was a manager or supervisor (but not an organizer or leader)." *Id.* § 3B1.1(b). Wright concedes that the criminal activity involved five or more participants.

The commentary to § 3B1.1 sets forth several factors for a sentencing court to consider in distinguishing a leadership role from a management role, including

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*Id.* § 3B1.1 cmt. n.4; *United States v. Esquenazi*, 752 F.3d 912, 938 (11th Cir.), *cert. denied*, 135 S. Ct. 293 (2014). However, there is no requirement that all of these factors be present. *Martinez*, 584 F.3d at 1026. At a minimum, the defendant must have "exerted some control, influence or decision-making authority over another participant in the criminal activity." *Id.*

Initially, we note that the district-court judge, in determining Wright's role in the offense, "ha[d] no duty to make any specific subsidiary factual findings." *Rodriguez De Varon*, 175 F.3d at 939. Rather, "[s]o long as the district court's decision is supported by the record and the court clearly resolves any *disputed*

7

factual issues, a simple statement of the district court's conclusion is sufficient." *Id.* (emphasis in original).

Here, undisputed record evidence supports the district court's determination that Wright was an organizer or leader of the conspiracy. Wright admitted as part of her guilty plea that she originated the fraudulent-check scheme, operated it from her home, produced the checks, and distributed the checks to her co-conspirators. *See Martinez*, 584 F.3d at 1027 (stating that the district court can properly base its factual findings on, among other things, facts admitted during a defendant's guilty plea); U.S.S.G. § 3B1.1 cmt. n.4. In other words, Wright was the most culpable participant in the bank-fraud conspiracy.

In addition, the record supports a determination that Wright exercised control or influence over her co-conspirators. *See Martinez*, 584 F.3d at 1026; U.S.S.G. § 3B1.1 cmt. nn.2 & 4. Wright admitted in her plea that one of her co-conspirators provided her with bank account numbers, which she used to create the checks. She also admitted that she received from co-conspirators merchandise purchased with the fraudulent checks. And, at sentencing, Wright's counsel conceded that Wright gave co-conspirators shopping lists of specific items to purchase and directed them to go to particular merchants.

Because the district court's determination of Wright's role in the offense was based on a permissible view of the facts, the court did not clearly err in applying

the four-level organizer or leader enhancement.  *See Martinez*, 584 F.3d at 1025;

*Rodriguez De Varon*, 175 F.3d at 937-38, 945.

## III.

Wright next contends that the district court erred in failing to run her federal

sentence concurrently with her Ben Hill County sentence because, according to

Wright, the Ben Hill County sentence was based on relevant conduct.  Wright also

asserts that her federal sentence is "nonsensical" because all of her state sentences

run concurrently.  Finally, Wright contends that the district court should have

adjusted her sentence downward by seventeen months to account for the time she

spent serving the Dougherty County sentence before her federal sentencing.

Generally, we review a district court's imposition of a consecutive sentence

for an abuse of discretion.  *United States v. Covington*, 565 F.3d 1336, 1346 (11th

Cir. 2009).  However, we review sentencing issues raised for the first time on

appeal for plain error only.[2]  *United States v. Shelton*, 400 F.3d 1325, 1328 (11th

Cir. 2005).

We review Wright's challenges relating to the Ben Hill County sentence for

plain error only because she did not present these arguments to the district court for

---

[2]  In order to correct an error on plain-error review, we must determine the existence of
an (1) error, (2), that is plain, and (3) that affects the defendant's substantial rights.  *Shelton*, 400
F.3d at 1328-29.  If these three conditions are met, we may exercise our discretion to correct the
forfeited error, "but only if (4) the error seriously affects the fairness, integrity, or public
reputation of judicial proceedings."  *Id.* 1329 (quotation marks omitted).

resolution at sentencing.  *See Shelton*, 400 F.3d at 1328.  In any case, after review, we find no abuse of discretion or error, plain or otherwise.

## A.

Federal courts generally "have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose, or that have been imposed in other proceedings, including state proceedings."  *Setser v. United States*, ___ U.S. ___, ___, 132 S. Ct. 1463, 1468 (2012); *see* 18 U.S.C. § 3584(a).  "Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently."  18 U.S.C. § 3584(a).  In determining whether to impose a consecutive or concurrent sentence, the district court must consider the factors listed in 18 U.S.C. § 3553(a).  *Id.* § 3584(b).

Section 5G1.3 of the Sentencing Guidelines governs the imposition of a sentence on a defendant subject to undischarged terms of imprisonment.  In general, the purpose of § 5G1.3 is "to mitigate the possibility that the fortuity of two separate prosecutions will grossly increase a defendant's sentence."  *Witte v. United States*, 515 U.S. 389, 404-05, 115 S. Ct. 2199, 2208-09 (1995).  The following three general scenarios are contemplated by that section.

First, if the instant offense is committed while a defendant is serving, or has been sentenced to, a term of imprisonment, § 5G1.3(a) provides that "the sentence

for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment." U.S.S.G. § 5G1.3(a). There has been no suggestion that § 5G1.3(a) applies in this case.

Second, if § 5G1.3(a) does not apply, and if a defendant is subject to a term of imprisonment for another offense that (i) is "relevant conduct to the instant offense," and (ii) was the basis for an increase in the offense level, § 5G1.3(b) provides that "the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment." *Id.* § 5G1.3(b)(2). In addition, "the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons." *Id.* § 5G1.3(b)(1).

Finally, § 5G1.3(c) provides that in any other case involving an undischarged term of imprisonment, the court has discretion to structure the sentence for the instant offense (to run concurrently, partially concurrently, or consecutively) so as "to achieve a reasonable punishment for the instant offense." *Id.* § 5G1.3(c).

## B.

In this case, Wright was subject to three undischarged terms of imprisonment resulting from three state sentences imposed at separate times. For

the reasons that follow, we conclude that this situation was governed by U.S.S.G. § 5G1.3(c) and that the district court did not abuse its discretion or plainly err in imposing Wright's sentence for the instant offense.  We address each prior state sentence separately before explaining why § 5G1.3(c) applies.

With regard to the Ben Hill County sentence, the district court was not required to run Wright's federal sentence concurrently with the undischarged term of that sentence under § 5G1.3(b).  Section 5G1.3(b) applies only if the prior offense is "relevant conduct" to the instant offense and was the basis for an increase in the offense level.  U.S.S.G. § 5G1.3(b).  As pertinent here, "relevant conduct" under the Sentencing Guidelines includes all acts and omissions committed by the defendant "during the commission of the offense of conviction." *Id.* § 1B1.3(a)(1)(A).  Wright's firearm conviction was not relevant conduct because it has no connection to the commission of the bank-fraud conspiracy, despite the fact that the firearm that provides the basis for that conviction was found in her apartment during a search related to the instant offense.  Nor did Wright's possession of a firearm factor into her offense level.  For instance, she did not receive a two-level increase in her offense level for "possession of a dangerous weapon (including a firearm) in connection with the offense").  *Id.*

12

§ 2B1.1(b)(15)(B).  Therefore, § 5G1.3(b) does not apply to the undischarged Ben Hill County sentence.[3]  Instead, the residual category of § 5G1.3(c) applies.

Wright's Crisp County parole-revocation sentence likewise is governed by § 5G1.3(c).  Subsection (c) applies in cases where, as here, the defendant was on parole at the time of the instant offense and has had her parole revoked.  *Id.* § 5G1.3 cmt. n.3(C).  In such cases, the Sentencing Commission recommends that the court impose the sentence for the instant offense consecutively to the sentence imposed for the revocation.  *Id.*

Regarding Wright's Dougherty County conviction, it is undisputed that the offense was based on relevant conduct.  Because of this, Wright contends, the district court was required to adjust her federal sentence under § 5G1.3(b)(1) to account for the period of imprisonment already served on the Dougherty County.[4]  Assuming that Wright had been able to show that this prior offense increased her offense level, an issue we do not reach, Wright may have been entitled to have her federal sentence reduced under § 5G1.3(b)(1) to account for "any period of

---

[3]  Similarly, because the Ben Hill County offense was not relevant conduct, the district court did not err in scoring it for Wright's criminal-history category.  *See* U.S.S.G. § 4A1.2(a)(1).

[4]  The government contends that we lack jurisdiction to entertain Wright's arguments in this respect based on the well-established principle that we lack jurisdiction to review the district court's discretionary refusal to depart downward under the Sentencing Guidelines. *United States v. Dudley*, 463 F.3d 1221, 1228 (11th Cir. 2006).  We disagree.  Notwithstanding Wright's use of the term "departure" in describing her request, the Sentencing Guidelines characterize the adjustment prescribed under § 5G1.3(b)(1) as a "sentence reduction," not a "downward departure." *Compare* U.S.S.G. § 5G1.3 cmt. n.2(C), *with* U.S.S.G. § 5G1.3 cmt. n.3(E) & n.4.

imprisonment already served on the undischarged term of imprisonment." *See* U.S.S.G. § 5G1.3 cmt. n.2(A); *see also United States v. Descally*, 254 F.3d 1328, 1333 (11th Cir. 2001) (concluding that the district court erred in failing to apply § 5G1.3(b) and take into account time already served in state custody for a related crime).

However, Wright was subject not just to the Dougherty County term of imprisonment, but also to the terms from Crisp County and Ben Hill County. Even assuming that § 5G1.3(b) applied to the Dougherty County sentence, § 5G1.3(c) applied to the remaining two sentences.

In this complex situation, "in which a defendant may be subject to multiple undischarged terms of imprisonment that seemingly call for the application of different rules," the commentary to § 5G1.3 provides that "the court may exercise its discretion in accordance with subsection (c) to fashion a sentence of appropriate length and structure it to run in any appropriate manner to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3 cmt. n.3(D). And, unlike subsection (b) of § 5G1.3, "subsection (c) does not authorize an adjustment of the sentence for the instant offense for a period of imprisonment already served on the undischarged term of imprisonment." *Id.* § 5G1.3 cmt. n.3(E). Therefore, in the circumstances of this case, the district court properly declined to reduce Wright's sentence under § 5G1.3(b)(1).

14

In sum, § 5G1.3(c) applies to the district court's sentence in this case. Therefore, the only remaining question is whether the district court abused its discretion by imposing a sentence that did not "achieve a reasonable punishment for the instant offense." *Id.* § 5G1.3(c); *see Setser*, 132 S. Ct. at 1468. Here, the undischarged terms of imprisonment from Crisp County and Ben Hill County were based on unrelated conduct and were imposed at different times from the federal sentence. *See* 18 U.S.C. § 3584(a). In addition, the Crisp County sentence resulted from the revocation of parole. *See* U.S.S.G. § 5G1.3 cmt. n.3(C). Given these facts, the district court acted well within its discretion and in accord with the Sentencing Guidelines when it imposed the sentence to run consecutively to Wright's undischarged terms of imprisonment for these offenses.[5] *See* 18 U.S.C. § 3584(a); U.S.S.G. § 5G1.3.

Wright's final argument is that her sentence is "nonsensical" because her state sentences were imposed to run concurrently with each other, but her federal sentence runs concurrently to one state sentence but not the others. In addressing a similar situation, the Supreme Court in *Setser* noted that such a sentence "is indeed a problem," but not one that "shows the District Court's sentence to be unlawful." *Setser*, 132 S. Ct. at 1472. As in *Setser*, Wright identifies no flaw in the court's decision-making process with respect to this question, "nor anything at the time of

---

[5] Wright does not otherwise argue that her sentence was unreasonably lengthy or that the court failed to consider the 18 U.S.C. § 3553(a) sentencing factors.

15

sentencing that the District Court failed to consider." *Id.* at 1472-73. Indeed, Wright appears to have requested, or at least acquiesced in, the structuring of the sentence imposed by the district court. For these reasons, we conclude that the district court did not abuse its discretion in structuring Wright's federal sentence as it did.

## IV.

In short, the district court did not clearly err in determining that Wright was an organizer or leader in the bank-fraud conspiracy, nor did the court abuse its discretion in structuring Wright's federal sentence to run consecutively to two undischarged state sentences or in declining to reduce her sentence by seventeen months under § 5G1.3(b)(1).

**AFFIRMED.**