[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-13846

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 5, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-00385-CR-T-30TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HECTOR MARTINEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 5, 2009)

Before MARCUS and HILL, Circuit Judges and VOORHEES,[*] District Judge.

---

[*] Honorable Richard L. Voorhees, United States District Judge for the Western District of North Carolina, sitting by designation.

MARCUS, Circuit Judge:

Hector Martinez appeals his 78-month sentence following his conviction for conspiring to distribute and to possess with the intent to distribute 100 kilograms or more of marijuana in violation of 18 U.S.C. §§ 846 and 841(b)(1)(B). On the slender record presented, the district court clearly erred in finding that Martinez was an organizer or leader under U.S.S.G. § 3B1.1(a). Accordingly, we vacate the sentence and remand for further proceedings consistent with this opinion.

I.

In 2003, a multi-agency task force began investigating the involvement of Martinez and others in an organization shipping marijuana between Texas and central Florida. Between Fall 2003 and Spring 2004, agents seized packages of marijuana mailed by Martinez and his co-conspirators. In 2007, Martinez was charged in a one-count indictment handed up by a grand jury sitting in the United States District Court for the Middle District of Florida with conspiracy to distribute and to possess with the intent to distribute 100 kilograms or more of marijuana.

At his March 11, 2008 plea hearing, Martinez pled guilty, agreeing that the government could prove the following facts beyond a reasonable doubt:

> During the course of and in furtherance of this conspiracy, the Defendant orchestrated the weekly shipment of mail parcels containing multi-pound quantities of marijuana from Texas to various locations in the middle district of Florida. To facilitate this conspiracy

2

as [well as] to avoid detection, the Defendant and his co-conspirators used fictitious return addresses on these parcels, had them shipped to residences belonging to other co-conspirators, utilized others to mail and/or receive the packages and employed Western Union wire transfers to send their drug proceeds to each other.

(Hr'g Trans. Plea Proceedings 64, Mar. 11, 2008).

In relevant part, Martinez's Presentence Investigation Report ("PSI") stated in Paragraph 9 that he

orchestrated weekly shipments of mail parcels containing multi-pound quantities of marijuana from Texas to various locations in the Middle District of Florida. Martinez and several co-conspirators used fictitious return addresses on these parcels and had them shipped to different residences belonging to other co-conspirators. Martinez also utilized other individuals – including many of his own family members – to mail or receive the packages containing the marijuana. The individuals whom Martinez enlisted to assist him in furtherance of the offense include, but are not limited to, his brother, Tomas Martinez, his sisters Amalia Martinez and Antonia Aguilar, his ex-girlfriend, Sally Cadona, and his daughter, Rosalinda Martinez.

(Martinez PSI ¶ 9). The PSI also said that Martinez participated in the wire transfer of $343,729 in drug proceeds during the duration of the conspiracy. (Martinez PSI ¶ 11). Paragraph 20 of the PSI set forth that Martinez was eligible for a role enhancement as an organizer or leader under U.S.S.G. § 3B1.1(a) because he "recruited and directed numerous participants within the conspiracy, which involved more than five participants." (Martinez PSI ¶ 20).

On May 23, 2008, Martinez submitted timely written objections to the PSI.

3

He objected to each element of the PSI that stated or implied he was eligible for the Section 3B1.1(a) enhancement for a leadership role. Particularly, Martinez objected to the facts as set out in Paragraph 9 of the PSI:

> We disagree that there is evidence showing that Martinez "orchestrated" the weekly shipment of marijuana, and disagree that family members became "co-conspirators" merely because they were implicated in having participated in wire transfers. We particularly object that Martinez's daughter, Rosalinda Martinez, assisted him further in the offense; the fact that family members wired money to Martinez, or received money from him, is not necessarily proof of conspiracy, assistance in, or knowledge of the offense, particularly where government records show that Rosalinda wired money with a grand total of approximately $400.00, on only 3 occasions over the period Martinez was watched. Position of Defendant Hector Martinez with Respect to Sentencing Factors As Laid Out in May 9, 2008 Presentence Report By Carlos Colon, United States Probation Office, ¶ 2.

Martinez also objected to the PSI's characterization of the conspiracy as the "Hector Martinez organization" or as "Martinez's network," and to the PSI's designation of his co-conspirators as "members" of his organization. (Position of Defendant Hector Martinez with Respect to Sentencing Factors As Laid Out in May 9, 2008 Presentence Report By Carlos Colon, United States Probation Office ¶¶ 1, 3, 4). Martinez unambiguously objected to the PSI's application of the U.S.S.G. § 3B1.1(a) four-level increase in his sentence, arguing that he had not "played a leadership, managerial or supervisory role in the offense." (Id. ¶ 6).

At his June 26, 2008 sentencing hearing, Martinez renewed his objection to

4

the government's characterization of his involvement as an organizer or a leader. Martinez argued that "the mere fact that [Martinez] was either sending these shipments . . . and receiving the money in return . . . does not in itself place him in a position where he was a supervisory management leader of this organization." (Hr'g Trans. Sentencing 75, June 26, 2008). Notably, the government introduced no evidence at the sentencing hearing except for referencing the PSI itself.

The district court judge summarily denied the objection to the facts in Paragraph 9, and the application of the Section 3B1.1(a) enhancement, stating that "if you read Paragraph 9 of the presentence report, he's admitted these facts, and Paragraph 9 shows him to be the leader. He's the one that enlisted others to help him in furtherance of the offense." (Id. at 79). The district court then adopted the PSI's factual findings, calling them "undisputed factual statements." (Id.) He applied the Guidelines as set forth in the PSI, which yielded a sentencing range of 70 to 87 months, and sentenced Martinez to 78 months' imprisonment. In imposing the sentence, the district court observed that it had considered the 18 U.S.C. § 3553 sentencing factors and found that Martinez's sentence was "sufficient but not greater than necessary to comply with the statutory purposes of sentencing." (Hr'g Trans. Sentencing 83, June 26, 2008). The district court also imposed a five year term of supervised release and entered a money forfeiture

judgment in the amount of $110,000.

This timely appeal followed.

## II.

We review a district court's determination that a defendant is subject to a Section 3B1.1 role enhancement as an organizer or leader for clear error. United States v. Ramirez, 426 F.3d 1344, 1355 (11th Cir. 2005).

Although the Sentencing Guidelines are no longer mandatory, United States v. Booker, 543 U.S. 220, 249-51 (2005), the district court is still required to consult, consider, and correctly calculate the guideline range when imposing a sentence, United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005). See also United States v. Pugh, 515 F.3d 1179, 1189-90 (11th Cir. 2008) (explaining that the district court committed reversible error having improperly calculated the applicable guideline range). Accordingly, if the district court erred in calculating the guideline range while imposing a sentence, we may vacate the defendant's sentence and remand the case for re-sentencing.

Martinez challenges the district court's imposition of a leadership role enhancement to his offense level calculation under the Sentencing Guidelines. Pursuant to Section 3B1.1(a), a district court must increase a defendant's offense level by four levels "[i]f the defendant was an organizer or leader of a criminal

6

activity that involved five or more participants or was otherwise extensive."

U.S.S.G. § 3B1.1(a). The commentary of that section explains that where, as here, the criminal organization is relatively small, "the distinction between organization and leadership, and that of management and supervision, is of less significance than in larger enterprises that tend to have clearly delineated divisions of responsibility." U.S.S.G. § 3B1.1 cmt. (backg'd).[1] Accordingly, the four level enhancement could be imposed on Martinez only if he were both (1) an organizer or leader, and (2) the criminal activity involved either five or more participants or was otherwise extensive. See United States v. Alred, 144 F.3d 1405, 1421 (11th Cir. 1998) ("[T]he plain language of section 3B1.1(a) requires both a leadership role and an extensive operation. Without proof of the defendant's leadership role, evidence of the operation's extensiveness is insufficient as a matter of law to warrant the adjustment.") (quotation marks omitted).

Comment four of U.S.S.G. § 3B1.1, in turn, sets forth seven explanatory factors that illuminate whether a defendant is an "organizer" or a "leader" and we consider these factors in determining whether to apply the adjustment for aggravating role in the offense:

---

[1] The commentary and application notes of the Sentencing Guidelines are authoritative, unless they are plainly erroneous, inconsistent with the regulation they interpret, or contrary to the Constitution or federal law. Stinson v. United States, 508 U.S. 36, 45 (1993); United States v. Torrealba, 339 F.3d 1238, 1242 (11th Cir. 2003).

7

(1) exercise of decision making authority, (2) the nature of participation in the commission of the offense, (3) the recruitment of accomplices, (4) the claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority exercised over others.

United States v. Gupta, 463 F.3d 1182, 1198 (11th Cir. 2006) (quoting U.S.S.G. § 3B1.1 cmt. n.4). "There is no requirement that all of the considerations have to be present in any one case." Ramirez, 426 F.3d at 1356. Instead, "these factors are merely considerations for the sentencing judge." Id. However, "[s]ection 3B1.1 requires the exercise of some authority in the organization, the exertion of some degree of control, influence, or leadership." Gupta, 463 F.3d at 1198 (quotation marks omitted). Thus, for example, a defendant's management of assets, standing alone, is insufficient to support an enhancement under Section 3B1.1. United States v. Glover, 179 F.3d 1300, 1302-03 (11th Cir. 1999) ("We now squarely decide that a section 3B1.1 enhancement cannot be based solely on a finding that a defendant managed the assets of a conspiracy."). Rather, there must be evidence that the defendant exerted some control, influence or decision-making authority over another participant in the criminal activity. Id. at 1303 ("While sufficient evidence exists to support a finding that [the defendant] managed an asset (the cocaine) of the conspiracy, no evidence (as the government concedes) shows that [the defendant] exercised control over another participant. And the district court made no finding

8

that [the defendant] was a manager of people."). The sentence adjustment was plainly designed to address "concerns about relative responsibility." U.S.S.G. § 3B1.1 cmt. backg'd.

On this bare record, the district court clearly erred in imposing a role enhancement pursuant to Section 3B1.1(a) on Martinez's sentence, because the government failed to prove the disputed facts in the PSI by a preponderance of the evidence, and, without those facts, presented insufficient evidence for the district court to find that Martinez was an organizer or leader of a criminal activity.[2] See Ramirez, 426 F.3d at 1355.

The district court determined that the information contained in Paragraph 9 of Martinez's PSI -- which said that Martinez "orchestrated" weekly shipments of marijuana from Texas to Florida, utilized others to mail or receive those shipments, and enlisted others to join in the scheme -- established that he was a leader. However, Martinez clearly and unambiguously objected to the PSI's characterization that he "orchestrated" the weekly shipments of marijuana, that he used his family members to further the offense, that it was his organization or

---

[2] Because we conclude that the record did not provide enough evidence for the district court to determine that Martinez was a leader, we need not and do not address his additional argument that the district court plainly erred in finding that the criminal activity involved five or more participants or was otherwise extensive as is also required by Section 3B1.1(a). See Alred, 144 F.3d at 1421.

network, or that he played any kind of leadership, managerial or supervisory role.

It is by now abundantly clear that once a defendant objects to a fact contained in the PSI, the government bears the burden of proving that disputed fact by a preponderance of the evidence. United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir. 2005); see also United States v. Liss, 265 F.3d 1220, 1230 (11th Cir. 2001) ("When a defendant challenges one of the bases of his sentence as set forth in the PS[I], the government has the burden of establishing the disputed fact by a preponderance of the evidence.") (quotation marks omitted); United States v. Lawrence, 47 F.3d 1559, 1566 (11th Cir. 1995) (explaining that when a defendant challenges a fact in the PSI, the government's burden of proof is triggered). We have explained that "the preponderance standard is not toothless. It is the district court's duty to ensure that the Government carries this burden by presenting reliable and specific evidence." United States v. Bernardine, 73 F.3d 1078, 1080 (11th Cir. 1996) (emphasis omitted). As we said in Lawrence:

> Once the Government has presented proper evidence, the district court must either: (1) make an explicit factual finding as to the allegation; or (2) determine that no such finding is necessary because the matter controverted will not be taken into account in sentencing the defendant.

47 F.3d at 1567 (citations omitted).

The government presented no evidence at the sentencing hearing to establish

any of the essential factual statements in the PSI disputed by Martinez. However, because Martinez admitted during his guilty plea that he did "orchestrate" drug shipments, his objection to that fact is without merit and the government need not have introduced any evidence to demonstrate it. A fact admitted to during a guilty plea cannot later be contested when it appears in the defendant's PSI. See United States v. Bennett, 472 F.3d 825, 832-33 (11th Cir. 2006). In addition, Martinez's guilty plea also stated that he, along with his co-conspirators, used others to assist in the drug shipments, and the district court could properly consider that as an undisputed fact for sentencing purposes. See United States v. Wilson, 884 F.2d 1355, 1356 (11th Cir. 1989) ("The findings of fact of the sentencing court may be based on evidence heard during trial, facts admitted by a defendant's plea of guilty, undisputed statements in the presentence report, or evidence presented at the sentencing hearing.").

Accordingly, the only undisputed facts upon which the district court could have properly based its role enhancement determination are these: Martinez "orchestrated" drug shipments; Martinez was directly involved in the wire transfer of $343,729 of drug proceeds (there was a total of approximately $650,000 of drug proceeds involved in this case); and Martinez, along with his co-conspirators, "utilized other individuals" to mail and receive drug shipments.

11

Those facts are not enough. They do not establish, standing alone or in concert, any of the seven factors set forth in Comment Four to Section 3B1.1: 1) decision making authority, 2) nature of participation, 3) recruitment, 4) larger share in profits, 5) degree of participation in planning and organizing, 6) nature and scope of the offense, and 7) the degree of control and authority exercised. U.S.S.G. § 3B1.1 cmt. n.4.

As for the first factor, there is no undisputed evidence that Martinez exercised decision-making authority over anyone in this conspiracy. The term "orchestrate" is not synonymous with control, supervise, or manage. Indeed, Webster's Third New International Dictionary 1587 (2002) defines "orchestrate" as "to arrange, develop, organize, or combine so as to achieve a desired or maximum effect." Thus, to "orchestrate" may mean no more than to organize or coordinate a particular transaction, as opposed to creating the transaction, managing the transaction, or otherwise exercising authority over the transaction. While a person who orchestrates a transaction may also be one who authorizes and supervises the transaction, the orchestrator just as easily could be a subordinate charged with dealing with the relatively minor details of completing that transaction. See United States v. Quigley, 373 F.3d 133, 138-40 (D.C. Cir. 2004) (holding that "orchestrator" did not necessarily imply that a defendant occupied the "hierarchical

12

relationship" necessary to satisfy Section 3B1.1). And, because the PSI contains no undisputed facts as to how Martinez organized or directed drug shipments, nor did the government provide any further details at the sentencing hearing, it is impossible to know what degree, if any, of decision-making authority Martinez possessed. In Alred, we made clear that merely distributing drugs and making arrangements for the delivery and sale of drugs between the buyer and the seller is not enough to demonstrate a leadership role under Section 3B1.1(a). 144 F.3d at 1422. In short, there is precious little we can infer from the bare, undisputed record that Martinez exercised any position of leadership or authority over his co-conspirators, or that it was somehow his idea to undertake any of the criminal activities.

The same analysis applies to the second factor: nature of the participation. Martinez's admissions in the plea colloquy do not illuminate his "relative responsibility," U.S.S.G. § 3B1.1 cmt. (bckg'd), vis à vis his unindicted co-conspirators. The facts to which Martinez acceded merely reveal that he acted in concert with his co-conspirators in shipping, transferring money, and concealing their conspiracy.

The third, fourth and fifth factors are similarly unavailing. There is no undisputed evidence in the PSI that Martinez recruited any of his co-conspirators.

There is no evidence that Martinez claimed a larger share of the fruits of the crime; indeed, in the Offender Characteristics section, the PSI says that Martinez is destitute and lives in a small mobile home "in an impoverished rural area." (PSI ¶ 47). If he claimed a greater share of the profits, it was not apparent from the unchallenged sections of the PSI or from the plea colloquy. Nor is it clear whether Martinez coordinated drug shipments and received drug proceeds via wire transfers independently, in concert with, or at the behest of and under the direction of a supervisor who planned and organized the overall scheme. In fact, at the sentencing hearing, Martinez alleged that he did not know who the leader of the group was. (Hr'g Trans. Sentencing 75). None of these factors are adequately supported by the unchallenged facts in the record.

Finally, as for the sixth and seventh factors, the record contains no undisputed evidence demonstrating that Martinez exercised any control or authority over others; Martinez repeatedly objected to any references to the conspiracy being his "network" or "organization," or that any of his co-conspirators were "members" of "his organization." It is not clear that this is one of the "larger enterprises that tend to have clearly delineated divisions of responsibility" that U.S.S.G. § 3B1.1 contemplated. U.S.S.G. § 3B1.1 cmt. bckg'd. And the government introduced nothing at the sentencing hearing in support of the PSI's claim that Martinez

14

exercised control and authority over others. The only undisputed evidence presented in this record is that Martinez, along with his co-conspirators, "utilized other individuals" to mail and receive drug shipments. This fact, phrased by the prosecutor at the plea allocution as joint action, presents no indicia of control or authority exercised over the co-conspirators charged with mailing and receiving drug shipments.

The majority of the admissions made by Martinez at his plea hearing equally involved his co-conspirators: "To facilitate this conspiracy to avoid detection, the Defendant and his co-conspirators used fictitious return addresses on these parcels, had them shipped to residences belonging to other co-conspirators, utilized others to mail . . . and employed Western Union wire transfers to send their drug proceeds to each other." (Hr'g Trans. Plea Proceedings 64, Mar. 11, 2008) (emphasis added). There is no suggestion (other than the single use of the verb "orchestrate") that Martinez had any position of leadership or authority over his co-conspirators or that it was his idea to undertake any of the criminal activities; the plea allocution yields no clear inference that he had subordinates. See Alred, 144 F.3d at 1421-22 (vacating a Section 3B1.1(a) role enhancement where only "slight evidence" indicated that the defendant "recruited or directed the actions of co-conspirators," and the defendant was directed by others who held controlling roles); United States

15

v. Yates, 990 F.2d 1179, 1181-83 (11th Cir. 1993) (holding that the defendant was not subject to a role enhancement under Section 3B1.1(a) where he engaged only in a seller/buyer relationship with the other participants).

On this bare record, the district court could not reject the objection to the sentence adjustment for an aggravating role under U.S.S.G. § 3B1.1(a) without requiring the government to present sufficient evidence to establish by a preponderance of the evidence that Martinez was an organizer or leader of the charged criminal conduct. Because the district court clearly erred in finding that Martinez was a leader or organizer of the conspiracy based on the plainly disputed facts found in Paragraph 9 of the PSI, we are required to vacate the sentence and remand for further proceedings consistent with this opinion. See United States v. Hall, 349 F.3d 1320, 1325-26 (11th Cir. 2003) (explaining that if the government does not present sufficient evidence to support the disputed fact, we are "obliged to vacate the sentence imposed and remand for resentencing.").

At re-sentencing, the government may present evidence in support of the claimed leadership enhancement to which Martinez has objected. And if it does so, the district court is obliged to make a clear determination as to whether the government has proven the necessary facts by a preponderance. See Liss, 265 F.3d at 1231 (vacating defendant's sentence where the government did not provide any

16

further evidence supporting a disputed fact in the PSI upon which the district court based its sentence and "remand[ing] to the district court for further findings); Lawrence, 47 F.3d at 1569 (vacating and remanding defendant's sentence with the instruction that the "district court base its findings on reliable and specific evidence rather than on the conclusory language of a PS[I], the sparse evidence given at a Rule 11 hearing, and the prosecution's mere reference to evidence adduced in the separate trials of co-indictees."). While there are, undoubtedly, many ways by which the government could establish an aggravating role enhancement, we cannot say with any confidence that the record before us has made the necessary hierarchical relationship clear.

**VACATED AND REMANDED.**