[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-10931
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 9, 2011
JOHN LEY
CLERK

D.C. Docket No. 4:09-cr-00035-RLV-WEJ-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

AARON WILBERT FREEMAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 9, 2011)

Before TJOFLAT, CARNES and FAY, Circuit Judges.

PER CURIAM:

Aaron Wilbert Freeman appeals his total 87-month sentence for conspiracy

to commit wire fraud, in violation of 18 U.S.C. § 1349, and money laundering, in

violation of 18 U.S.C. § 1956. He argues that the district court erroneously applied a four-level role enhancement under U.S.S.G. § 3B1.1(a) because he did not exercise control over any of his co-conspirators. For the reasons set forth below, we affirm Freeman's sentence.

## I.

Freeman worked as a scaler for Temple-Inland, Inc. ("TI"), a paper and lumber corporation that bought timber by the truckload from timber brokers. As a scaler, Freeman weighed the trucks as they entered and exited the mill. After a truck was weighed, TI's computers would produce a paper scale ticket and transmit the weight of the timber and the broker's information to its headquarters. TI paid the brokers based on the amount of timber the brokers' drivers had delivered, and the truck drivers used the paper scale tickets to obtain payment for their deliveries from their brokers. In 2003, Freeman discovered how to make the computers produce two weight readings for a single truckload of timber. He could then credit the nonexistent load to a broker and print a paper scale ticket for a driver to submit to that broker for payment.

Freeman approached Robert Frank Ferguson, George Tate, and Andrew Carthern ("Andrew"), all truck drivers, and Kevin Fields, the owner of a trucking company, about submitting fake paper scale tickets to their brokers for payment.

Ferguson accepted fake paper scale tickets from 2003 until January 2005, and his broker paid his boss approximately $112,000 for nonexistent loads during that time. Tate participated in the conspiracy from December 2004 until March 2006, during which time his brokers paid him approximately $167,000 for nonexistent loads. Tate left the conspiracy because Freeman was pressuring him to take an increasing number of fake paper scale tickets. Andrew approached his father, Roger Carthern ("Roger"), about participating in this scheme, and two brokers ultimately paid Andrew and Roger approximately $313,000 for nonexistent loads. Andrew and Roger paid Freeman more than half of that sum. Fields accepted fake paper scale tickets from September 2004 until April 2006, during which time his broker paid him approximately $2,964,268 for nonexistent loads. Fields approached Jason Joseph about taking fake paper scale tickets. Between April 2005 and September 2005, Joseph's broker paid him approximately $828,692 for nonexistent loads. Joseph shared this money with Fields and Freeman. TI paid approximately $4,116,978 for nonexistent loads over the course of this conspiracy.

Freeman received a four-level role enhancement under U.S.S.G. § 3B1.1(a) because he was an organizer or leader of the conspiracy. His total adjusted offense level was 29, he had a criminal history category of I, and his guideline range was 87 to 108 months' imprisonment.

At sentencing, Freeman argued that he did not have a managerial position in the conspiracy. None of the participants controlled any of the other co-conspirators, and each conspirator was necessary for the crime to be successful. The court overruled Freeman's objection to the four-level role enhancement because he had organized this crime, which would not have occurred without Freeman. The court sentenced Freeman to 87 months on each count, to run concurrently. Freeman objected that his guideline range was improperly calculated based on his objection to the role enhancement.

## II.

We review a district court's application of a § 3B1.1 role enhancement for clear error. *United States v. Martinez*, 584 F.3d 1022, 1025 (11th Cir. 2009). Under the Sentencing Guidelines, a defendant receives a four-point offense level increase for being "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). Relevant factors in determining whether a § 3B1.1(a) enhancement is warranted include:

> (1) exercise of decision making authority, (2) the nature of participation in the commission of the offense, (3) the recruitment of accomplices, (4) the claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority exercised over others.

4

*Martinez*, 584 F.3d at 1026 (quotation omitted). It is not necessary that every factor is present for the enhancement to be applied in a particular case. *Id.* A role enhancement is appropriate only where the defendant exercised "some control, influence or decision-making authority over another participant in the criminal activity." *Id.* It is insufficient that a defendant merely managed the assets of the conspiracy. *Id.* The enhancement is intended "to address concerns about relative responsibility." *Id.* (quotation omitted). We upheld a role enhancement under § 3B1.1(a) where the defendant recruited and instructed two co-conspirators. *United States v. Ndiaye*, 434 F.3d 1270, 1304 (11th Cir. 2006).

The district court did not clearly err in applying a four-level role enhancement under § 3B1.1(a).[1] *See Martinez*, 584 F.3d at 1025. A number of factors support the application of this enhancement. Freeman concocted the entire criminal scheme and recruited Ferguson, Tate, Andrew, and Fields to participate in the conspiracy. Thus, the nature of Freeman's participation, his recruitment of co-conspirators, and the degree to which he organized the conspiracy all support the application of the role enhancement. *See id.* at 1026. Next, it is not clear what

---

[1] Freeman has waived any argument that the criminal activity did not involve at least five participants or that it was not otherwise extensive because he did not raise this issue in his initial brief. *See United States v. Silvestri*, 409 F.3d 1311, 1338 n.18 (11th Cir. 2005) (stating that the defendant waived an argument not raised in his initial brief).

percentage of the profits Freeman demanded from each co-conspirator, but Andrew and Roger paid Freeman more than half of the approximately $313,000 they received for submitting fake paper scale tickets. It thus appears that Freeman's claimed share of the profits of the conspiracy supports the application of the role enhancement as well. *See id.* The extensive nature and scope of the conspiracy support the application of the enhancement because this conspiracy lasted nearly three years and caused a loss of approximately $4,116,978. *See id.*

The final factor, the degree of control Freeman exercised over his co-conspirators, also weighs in favor of applying the enhancement. *See Martinez*, 584 F.3d at 1026. Freeman exercised control over Tate by pressuring him to take an increasing number of fake paper scale tickets. In addition, Freeman exercised control over the other conspirators because he was the only conspirator who could produce the fake paper scale tickets, without which the entire scheme would have been impossible. Based on Freeman's role in organizing this conspiracy, his recruitment of four co-conspirators, the fact that he obtained at least some of the conspiracy's profits, and the fact that only he could produce the fake paper scale tickets essential to the conspiracy, the four-level role enhancement was properly applied in this case. *See Ndiaye*, 434 F.3d at 1304.

For the foregoing reasons, we affirm Freeman's sentence.

**AFFIRMED.**