[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14583
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-20301-FAM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANNILET DOMINGUEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 17, 2015)

Before WILSON, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

Annilet Dominguez appeals her sixty-eight-month total sentence imposed after she pleaded guilty to conspiracy to commit, and the commission of, health care fraud. She avers that, although she held the title of administrator at her job at Professional Medical Home Health, LLC (PMHH), there was no evidence that she exercised control or leadership within the conspiracy. She asserts that the uncontested facts demonstrate that she was not a decision maker and that the district court disregarded the relevant evidence to this effect. We find that the facts in the record are insufficient to support by a preponderance of the evidence that Dominguez played a leadership role in the conspiracy; thus, the district court erred in applying a leadership role enhancement. Accordingly, we vacate her sentence and remand the case for resentencing.

## I.

A grand jury indicted Dominguez for conspiracy to commit health care fraud (Count One), in violation of 18 U.S.C. § 1349, and health care fraud (Counts Three, Four, and Five), in violation of 18 U.S.C. § 1035(a)(1) and (2). The indictment alleged that Dominguez, along with codefendant Annarella Garcia and other coconspirators, filed fraudulent Medicare claims seeking payment for the costs of health services that were not medically necessary or were not provided. Dominguez initially entered a plea of not guilty, but she changed her plea to guilty without the benefit of a plea agreement.

2

The district court conducted a change-of-plea colloquy before accepting Dominguez's guilty plea. At this hearing, the government laid out the factual basis for the plea. Dominguez held the title of administrator at PMHH, a Miami-based home health agency that served Medicare beneficiaries. Dominguez worked at PMHH, but she did not have an equity interest in the company. She and her coconspirators fraudulently billed Medicare.

Dominguez's role in the fraud scheme "involved managing and supervising personnel at [PMHH], paying kickbacks and bribes to patient recruiters, interacting with patient recruiters, and coordinating and overseeing the submission of fraudulent claims that were submitted to the Medicare program." Between December 2008 and February 2014, Medicare paid PMHH approximately $6.25 million in fraudulent reimbursements. The money Dominguez received came in the form of a salary and ten percent of any check she cashed on behalf of her codefendant. Dominguez agreed with the factual basis that the government set forth. Particularly relevant to this appeal was the following language:

> The actions taken by Dominguez were directed by, and at the instruction of, [codefendant] Garcia and other unindicted co-conspirators. Garcia and other unindicted co-conspirators were generally the ones to decide or negotiate: which patients/recruiters would be used by [PMHH], the amount of kickbacks/percentages to be paid out to patients or recruiters, the hiring or firing of employees, or what services would be billed.
>
> . . . .

3

A portion of the funds received from Medicare were cashed by the defendants, used to pay the patient recruiters, or used to perpetrate the fraud. . . . Furthermore, at the instruction of [codefendant] Garcia, Quick Employee Management was established by Dominguez. The company was used, in part, as a means to distribute money from the illegal activities at [PMHH] to various individuals, including several unindicted co-conspirators. For a portion of the time that the Quick Employee Management account was utilized, Dominguez was not directly involved because she was at the hospital caring for her ill son, who received a bone marrow transplant. During this time, Dominguez was instructed by Garcia to pre-sign blank checks from this account, and [Dominguez] complied with that instruction.

A presentence investigation report (PSI) was prepared that assigned a base offense level of six pursuant to U.S.S.G. § 2B1.1(a)(2). As relevant here, it applied a three-level increase on the basis that Dominguez was a manager or supervisor in the scheme pursuant to U.S.S.G. § 3B1.1(b).[1] Dominguez had no prior convictions, so her criminal history category was I. Based on a total offense level of twenty-six and a criminal history category of I, the guideline range was sixty-eight to seventy-eight months' imprisonment.

In a supplemental sentencing memorandum and at sentencing, Dominguez argued that the three-level leadership enhancement was inappropriate. Dominguez criticized the government's failure to have identified any individuals whom she allegedly had supervised or managed and the lack of evidence establishing that she

---

[1] The PSI also applied an eighteen-level increase for the amount of loss, pursuant to § 2B1.1(b)(1)(J); a two-level increase because the offense involved a government health care program, pursuant to § 2B1.1(b)(7); and a three-level reduction for acceptance of responsibility, pursuant to § 3E1.1(a) and (b). This resulted in a total offense level of twenty-six.

had any control or decision-making authority.  In response to the district court's questions, defense counsel stated that Dominguez had the title of administrator and processed the papers that allowed the payment of kickbacks, but did not exercise decision-making authority, recruit any accomplices, or claim a larger share of the money.  The district court stated that Dominguez's admissions at the plea colloquy were enough to apply the enhancement and overruled the objection.  Accordingly, the court sentenced her to a total of sixty-eight months of imprisonment, followed by three years of supervised release.  Following entry of judgment, Dominguez appealed.

## II.

The district court's determination of a convicted defendant's role in the offense is a question of fact that we review for clear error, while "the application of the [Sentencing] Guidelines to the facts is a question of law that we review de novo."  *United States v. Mesa*, 247 F.3d 1165, 1168 (11th Cir. 2001).

When a defendant challenges one of the factual bases of her sentence set forth in the PSI, the government has the burden of establishing the disputed fact by a preponderance of the evidence.  *United States v. Martinez*, 584 F.3d 1022, 1027 (11th Cir. 2009).  "It is the district court's duty to ensure that the [g]overnment carries this burden by presenting reliable and specific evidence."  *Id.* (internal quotation marks omitted).

The sentencing court may base its findings on "evidence heard during trial, facts admitted by a defendant's plea of guilty, undisputed statements in the presence report, or evidence presented at the sentencing hearing." *United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir. 1989). Because the district court is required to calculate and consider the Sentencing Guidelines, "if the district court erred in calculating the guideline range while imposing a sentence, we may vacate the defendant's sentence and remand the case for re-sentencing." *Martinez*, 584 F.3d at 1025.

The Guidelines provide for a three-level increase "[i]f the defendant was a manager or supervisor." § 3B1.1(b). "To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." *Id.* § 3B1.1 cmt. n.2. Courts consider several factors in determining whether to apply the aggravating role enhancement including:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*Id.* § 3B1.1 cmt. n.4; *see also Martinez*, 584 F.3d at 1026. "There is no requirement that all of the considerations have to be present in any one case . . . [because] these factors are merely considerations for the sentencing judge."

*Martinez*, 584 F.3d at 1026 (internal quotation marks omitted).  Instead, imposition of this role enhancement "requires the exercise of some authority in the organization, the exertion of some degree of control, influence, or leadership."  *Id.* (internal quotation marks omitted).

## III.

Here, Dominguez objected to the imposition of a leadership role enhancement, and the government did not present any additional evidence at the sentencing hearing.  While Dominguez and the government presented a statement of stipulated facts, the court did not discuss those agreed upon facts before overruling the objection.  Instead, the district court relied on Dominguez's admissions in the plea colloquy—that Dominguez was an administrator at PMHH and that she supervised and oversaw PMHH personnel—in order to impose the leadership role enhancement.

On their own, however, these admissions do not support the leadership enhancement because it is unclear from the record whether any of the personnel she supervised were members of the conspiracy.  *See id.* at 1026 (holding that imposition of the leadership enhancement under § 3B1.1 requires "evidence that the defendant exerted some control, influence[,] or decision-making authority over *another participant in the criminal activity*" (emphasis added)).

The determination as to whether the leadership role enhancement applies should be based on Dominguez's actual conduct rather than her job title as administrator. However, even considering her other actions, such as forming the Quick Employee Management corporation at her codefendant's request, interacting with recruiters, processing paperwork to facilitate the filing of false claims, and writing checks to distribute the fraudulently obtained money (paying the patient recruiters), the record does not show control over another member of the conspiracy. *See id.* at 1026–29 (determining that leadership enhancement was inappropriate even where the evidence showed that the defendant orchestrated drug shipments, was directly involved in a wire transfer, and utilized others to mail and receive drug shipments, because control over resources is not the same as control over other participants). Nor can her management of the assets of the conspiracy justify the leadership enhancement. *See id.* at 1026 ("[A] defendant's management of assets, standing alone, is insufficient to support an enhancement under Section 3B1.1.").

Further, there was no undisputed evidence that Dominguez exercised independent decision making authority, recruited accomplices, or claimed a right to a larger share of the fruits of the crime. *See id.* The agreed upon facts actually indicated that it was the other coconspirators that decided and negotiated which patients and recruiters would be utilized, what amount of kickbacks and

8

percentages would be paid, which employees would be hired and fired, and what services would be billed. Without more evidence regarding Dominguez's role, these facts suggest that factors such as the nature of her participation in the commission of the offense and her degree of participation in planning or organizing the offense weigh against a finding that Dominguez had a leadership role in the conspiracy. *See id.*

Thus, we find that the government failed to present sufficient evidence that Dominguez was a manager or supervisor in the criminal activity. Accordingly, in light of the "slender record presented," the district court erred in concluding that Dominguez was a manager or supervisor under § 3B1.1(b) and imposing the three-level leadership role enhancement. *See id.* at 1023. Upon review of the record and consideration of the parties' briefs, we vacate Dominguez's sentence and remand the case for resentencing.

**SENTENCE VACATED AND CASE REMANDED.**