[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————

No. 20-10581

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

EIDER UTRIA BATISTA,
a.k.a. Pepe,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cr-00145-VMC-TGW-1

————————————

Before JILL PRYOR, LUCK, and EDMONDSON, Circuit Judges.

PER CURIAM:

Eider Utria Batista appeals his 135-month sentence imposed after Batista pleaded guilty to one count of conspiracy to possess with intent to distribute cocaine and marijuana and to four counts of possession with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii), (b)(1)(C), (b)(1)(D), 846, and 18 U.S.C. § 2. Batista contends the district court erred in applying a four-level enhancement for his leadership role in the drug-trafficking offenses. No reversible error has been shown; we affirm.

We review for clear error a district court's determination that a defendant is an organizer or leader subject to a role-enhancement under U.S.S.G. § 3B1.1. *See United States v. Martinez*, 584 F.3d 1022, 1025 (11th Cir. 2009). Under the clear-error standard, we will affirm the district court's decision "unless our review of the record leaves us with the definite and firm conviction that a mistake has been committed." *See United States v. Poirier*, 321 F.3d 1024, 1035 (11th Cir. 2003) (quotation omitted).

Under the Sentencing Guidelines, the district court may increase a defendant's base offense level by four levels "[i]f the defendant was an organizer or leader of a criminal activity that

involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). A "participant" is defined as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." *Id.* § 3B1.1(a), comment. (n.1). For the role enhancement to apply, "there must be evidence that the defendant exerted some control, influence or decision-making authority over another participant in the criminal activity." *See Martinez*, 584 F.3d at 1026; U.S.S.G. § 3B1.1, comment. (n.2) ("the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants"). The government must prove the existence of an aggravating role by a preponderance of the evidence. *See Martinez*, 584 F.3d at 1027. The government "carries this burden by presenting reliable and specific evidence." *Id.*

In determining whether a defendant qualifies as an "organizer or leader" for purposes of section 3B1.1(a), the sentencing court may consider these factors:

> (1) the exercise of decision[-]making authority, (2) the nature of participation in the commission of the offense, (3) the recruitment of accomplices, (4) the claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority exercised over others.

*United States v. Shabazz*, 887 F.3d 1204, 1222 (11th Cir. 2018); U.S.S.G. § 3B1.1, comment. (n.4).  We have described these factors as "considerations for the sentencing judge, who makes the factual determinations for the applicability of the § 3B1.1 enhancement on a case-by-case basis": nothing requires that all seven factors must point to an enhancement. *See United States v. Ramirez*, 426 F.3d 1344, 1356 (11th Cir. 2005).

At Batista's sentencing hearing, the government presented testimony of Special Agent Brooks with Homeland Security Investigations, who served as the lead case agent on Batista's case.  Agent Brooks said the investigation into the charged drug-trafficking operation began in September 2016 and was still ongoing when Batista was sentenced in January 2020.  Agent Brooks also testified that -- during a post-*Miranda*[1] interview -- Batista told agents that he obtained the cocaine from a source in Miami (Mr. Calvo).  Batista said he would drive to Miami, obtain cocaine from Mr. Calvo, and then drive the cocaine back to Sarasota.

Agent Brooks further testified that a confidential informant sometimes bought cocaine directly from Batista's son-in-law, Yoannel De Agostines Perez.  During those arranged drug buys, Agostines Perez identified Batista as the source of his cocaine supply.  Agostines Perez also indicated that he was required to contact Batista to determine the price and quantity of drugs that could be sold.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

20-10581                Opinion of the Court                    5

Based on the evidence gathered during the years-long investigation -- including from the recorded arranged drug buys, the searches of Batista's home and business, and interviews with Batista's co-conspirators -- Agent Brooks testified that law enforcement officers had concluded that Batista was "running the show." Among other things, Agent Brooks said the investigation showed that Batista obtained and provided the cocaine for the drug-trafficking operation, stashed drugs and drug proceeds at his home and at his jewelry store, and made decisions about the price and quantity of drugs to be sold.

The sentencing court was entitled to rely on undisputed facts in the Presentence Investigation Report and on Agent Brooks's testimony at the sentencing hearing.[2] *See United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir. 1989) ("The findings of fact of the sentencing court may be based on evidence heard during trial, facts admitted by a defendant's plea of guilty, undisputed statements in the presentence report, or evidence presented at the sentencing hearing."). Agent Brooks offered specific and reliable evidence to support his testimony that Batista was "running the

---

[2] The record contradicts Batista's assertion that the district court relied impermissibly on the prosecutor's factual assertions made during the sentencing hearing and on the government's factual basis included in the Notice of Maximum Penalties, Elements of Offense, Personalization of Elements and Factual Basis. The district court found expressly that -- independent of the government's factual proffers -- Agent Brooks's testimony was sufficient to establish Batista's leadership role.

show." Batista had an adequate opportunity to rebut the evidence against him through cross-examination of Agent Brooks.

On this record, the district court determined reasonably that the government had established by a preponderance of the evidence that Batista played a leadership role in a criminal conspiracy involving five or more participants. That Batista acquired the cocaine in Miami, transported the cocaine to Sarasota, and supplied the cocaine to co-conspirators evidences a high degree of involvement in the planning, organization, and commission of the drug-trafficking offenses. The record also supports a finding that Batista had decision-making authority and exerted some level of control and authority over the other participants given that Batista set the prices and the quantity of drugs that could be sold by others.

The record also evidences sufficiently that the drug-trafficking operation involved five or more participants. In addition to undisputed evidence of involvement by Batista and by Calvo, Agent Brooks testified about the activities of Agostines Perez and identified two other co-conspirators (Jose Gonzalez Perez and Miker Pupo) who were each involved in drug-trafficking activities at the stash house.

About Calvo, we recognize that the existence of a buyer-seller relationship -- by itself -- is insufficient to establish a conspiracy. See United States v. Thompson, 422 F.3d 1285, 1292 (11th Cir. 2005). We have concluded, however, that a conspiratorial agreement "to distribute drugs 'may be inferred when the evidence shows a continuing relationship that results in the repeated transfer

of illegal drugs to a purchaser.'" *See id.* (alteration omitted) (affirming a conviction for conspiracy to possess with intent to distribute cocaine where the evidence showed a continuing relationship in which the defendant supplied cocaine to his co-conspirator, the majority of which was then sold to individual customers); *see also United States v. Brown*, 587 F.3d 1082, 1089 (11th Cir. 2009) (noting that a conspiracy to distribute drugs may be evidenced by "repeated transactions buying and selling large quantities of illegal drugs").

The undisputed evidence demonstrates that Calvo supplied the cocaine for the drug-trafficking operation and that Batista made regular trips to Miami to retrieve from Calvo cocaine that Batista transported to Sarasota for distribution. Given this evidence of a continuing relationship between Batista and Calvo involving repeated drug sales, the district court committed no clear error in determining that Calvo qualified as a "participant" in the drug-trafficking operation.

We see no clear error in the district court's application of the four-level leadership role enhancement; we affirm Batista's sentence.

AFFIRMED.