[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12938

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DERRICK S. LEWIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:17-cr-00195-SCB-AAS-1

_____

Before NEWSOM, ABUDU, and MARCUS, Circuit Judges.

PER CURIAM:

Derrick Lewis, proceeding with counsel, appeals his convictions after a jury trial and the ensuing 240-month sentence for conspiring and aiding and abetting to possess with intent to distribute cocaine and marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A), and (b)(1)(B). The conspiracy began when Lewis, a restaurant owner, recruited Darrell Flowers -- a business owner with warehouses in many states and relationships with logistics companies that moved freight -- to help him transport millions of dollars of cocaine and marijuana from Phoenix, Arizona to Tampa, Florida to be distributed. On February 24, 2017, as part of a United States Drug Enforcement Administration ("DEA") investigation, law-enforcement officers in Tampa found 15 kilograms of cocaine and 444 kilograms of marijuana in a U-Haul van rented by Lewis. The same day, officers recovered another ten kilograms of cocaine in an SUV that Lewis had left in a parking lot. Four months later, officers arrested Lewis, but, shortly before trial, he fled. He was arrested in Mexico about four years later, and then tried and convicted of the trafficking conspiracy and the substantive drug crimes.

On appeal, Lewis argues that: (1) the district court erred by denying his motion to suppress evidence recovered from vehicles used in the conspiracy; (2) the district court erred by denying his motion for judgment of acquittal based on insufficient evidence of

his knowledge of the crimes; (3) the district court abused its discretion by denying his claim of a marital-communications privilege during his ex-wife's testimony; (4) the district court abused its discretion by admitting into evidence cocaine and cash in violation of Federal Rule of Evidence 404(b); (5) the district court erred by admitting into evidence a certificate from the Florida Department of Revenue containing testimonial hearsay; (6) at sentencing, the district court clearly erred by finding he was an organizer or leader of the conspiracy and imposing a 4-level enhancement; (7) the district court plainly erred by applying a 2-level enhancement for obstruction of justice; and (8) his 240-month total sentence is substantively unreasonable.  After careful review, we affirm.

## I.

When reviewing the denial of a motion to suppress, we review the district court's factual determinations for clear error and the application of the law to those facts *de novo*.  *United States v. Smith*, 821 F.3d 1293, 1302 (11th Cir. 2016).  In so doing, we review findings of fact in the light most favorable to the prevailing party and afford "substantial deference to the factfinder's credibility determinations, both explicit and implicit."  *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012).  We must accept the version of events adopted by the district court "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it."  *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (quotations omitted).  We "may affirm the denial of a motion to suppress on any ground

supported by the record." *United States v. Caraballo*, 595 F.3d 1214, 1222 (11th Cir. 2010).

We similarly review the sufficiency of the evidence to support a conviction *de novo*, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict. *United States v. Reeves*, 742 F.3d 487, 497 (11th Cir. 2014). We are "obliged to affirm the convictions if a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id.* We also review *de novo* whether a hearsay statement is testimonial and implicates the Sixth Amendment's Confrontation Clause. *United States v. Wilson*, 788 F.3d 1298, 1316 (11th Cir. 2015).

We review a district court's evidentiary rulings for abuse of discretion, including its ruling on a claim of evidentiary privilege, and review the court's factual findings for clear error. *United States v. Langford*, 647 F.3d 1309, 1319 (11th Cir. 2011); *United States v. Singleton,* 260 F.3d 1295, 1301–02 (11th Cir. 2001). We will not reverse an erroneous evidentiary ruling if the error was "harmless." *Langford*, 647 F.3d at 1323. We will not reverse a conviction "if sufficient evidence uninfected by any error supports the verdict, and the error did not have a substantial influence on the outcome of the case." *Id.* We've held that an erroneous admission of evidence was harmless when it was cumulative of other permissible evidence. *United States v. Rivera*, 944 F.2d 1563, 1567, 1569 (11th Cir. 1991).

In reviewing sentencing issues, we review the sentence a district court imposes for "reasonableness," which "merely asks

whether the trial court abused its discretion." *United States v. Pugh*, 515 F.3d 1179, 1189 (11th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 351 (2007)). We review the district court's imposition of an aggravating role enhancement for clear error. *United States v. Shabazz*, 887 F.3d 1204, 1222 (11th Cir. 2018). When reviewing a court's imposition of an adjustment for obstruction of justice, we generally review the district court's factual findings for clear error and its application of those facts to the Guidelines *de novo*. *United States v. Guevara,* 894 F.3d 1301, 1311 (11th Cir. 2018).

However, when a party fails to make specific objections at sentencing after being given an opportunity to do so by the district court, we will only review those challenges to the sentence on appeal for plain error. *United States v. Ramirez-Flores*, 743 F.3d 816, 821 (11th Cir. 2014). In order to preserve an objection, a defendant "must raise that point in such clear and simple language that the trial court may not misunderstand it." *Id.* (quotations omitted). To establish plain error, the defendant must show (1) an error, (2) that is plain, and (3) that affected his substantial rights. *United States v. Turner*, 474 F.3d 1265, 1276 (11th Cir. 2007). If the defendant satisfies these conditions, we may exercise our discretion to recognize the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* "An error is plain if controlling precedent from the Supreme Court or the Eleventh Circuit establishes that an error has occurred." *Ramirez-Flores*, 743 F.3d at 822 (quotations omitted). The relevant time for assessing whether an error was plain is at the time of appellate consideration. *Id.*

Absent exceptional circumstances, an issue not raised in an initial brief on appeal will not be considered by this Court. *United States v. Campbell*, 26 F.4th 860, 871–875 (11th Cir. 2022) (en banc). A party fails to adequately brief a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).

## II.

First, we are unpersuaded by Lewis's claim that the district court erred by denying his motion to suppress. The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. Amend. IV. Under the exclusionary rule, evidence cannot be used against a defendant in a criminal trial where that evidence was obtained through an encounter with police that violated the Fourth Amendment. *United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003). "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978).

A "'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed," and a "'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Odoni*, 782 F.3d 1226, 1237 (11th Cir. 2015) (citation omitted). Because "[s]earches and seizures implicate two distinct interests: a privacy interest affected by a search, and a possessory

interest affected by a seizure," the search and seizure must be analyzed separately. *Id.* at 1237–38.

A traffic stop is a seizure within the meaning of the Fourth Amendment. *Perkins*, 348 F.3d at 969. The Supreme Court has held that "during a traffic stop an officer seizes everyone in the vehicle, not just the driver." *Brendlin v. California*, 551 U.S. 249, 255 (2007) ("[s]topping an automobile and detaining its occupants constitute a 'seizure'") (citations omitted).

"'[T]raditional or common law theories of property rights do not automatically confer standing to challenge a search.'" *United States v. Hall*, 716 F.2d 826, 829 (11th Cir. 1983) (citation omitted). When challenging a search on Fourth Amendment grounds, the defendant "must establish both a subjective and an objective expectation of privacy," with the subjective component requiring "that a person exhibit an actual expectation of privacy," and the objective component requiring "that the privacy expectation be one that society is prepared to recognize as reasonable." *United State v. King*, 509 F.3d 1338, 1341 (11th Cir. 2007) (quotations omitted). Courts consider a variety of circumstances in assessing the reasonableness of a privacy expectation, including: (1) whether the defendant had ownership rights; (2) whether he had a possessory interest in the place searched; (3) whether he had the right to exclude others from the place searched; (4) whether he had exhibited a subjective expectation that it would remain free from governmental invasion; (5) whether he took normal precautions to maintain privacy; and

(6) whether he was legitimately in the place searched.  *See United States v. Pitt*, 717 F.2d 1334, 1337–38 (11th Cir. 1983).

Here, the district court denied Lewis's motion to suppress evidence obtained from two separate vehicles based on a finding that Lewis lacked standing to challenge the traffic stop of one vehicle, the U-Haul van, and the search of the other vehicle, the GMC Yukon SUV.  It did not err.

As for the traffic stop conducted on the U-Haul, Lewis lacked standing to challenge it.  Lewis's coconspirator Darrell Flowers was the person in the U-Haul at the time of the traffic stop; Lewis was not an occupant nor was he even detained during the stop, and thus, he was not subjected to a seizure within the meaning of the Fourth Amendment. *See Brendlin*, 551 U.S. at 255; *Perkins*, 348 F.3d at 969.  So even though Lewis's name was on the U-Haul rental agreement, Flowers was the one driving it at the relevant time and Lewis did not establish how the traffic stop meaningfully interfered with his possessory interest in it. *Rakas*, 439 U.S. at 130 n.1; *Odoni*, 782 F.3d at 1237–38.[1]

Nor did the district court err by finding that Lewis lacked standing to challenge the search of the Yukon.  To begin with, Lewis was permitted to drive the Yukon, but Flowers was the

---

[1] To the extent Lewis intended to challenge the district court's ruling that the search of the U-Haul was lawful, he did not prominently raise this issue on appeal.  Rather, he only mentions that the search of the U-Haul was unlawful in one sentence without supporting arguments or authority, so we decline to consider this issue.  *See Sapuppo*, 739 F.3d at 681.

person listed on the rental agreement, not Lewis. *Pitt*, 717 F.2d at 1337–38. Further, as the record reflects, Lewis lacked the right to exclude others from the Yukon because another coconspirator, Ricardo Webb, who was a cook at Lewis's restaurant, showed up with a key fob to access the Yukon after Lewis left it parked in the public parking lot. *Id*. And while Lewis was seen taking counter-surveillance measures before he left the Yukon at a shopping center, he then left it parked and unoccupied for hours before Webb arrived to gain access to it. As a result, Lewis's movements indicated that he did not take normal precautions to maintain privacy and he did not have a subjective expectation that the Yukon would remain free from governmental invasion. *Id*. Further, Lewis was also not in or around the Yukon at the time of the search, and thus, he was not legitimately in the place searched. *Id*.

For these reasons, the district court did not err in holding that Lewis lacked standing to contest the traffic stop conducted on the U-Haul and the search of the Yukon, and we need not address the merits of either challenge.

### III.

We similarly find no merit to Lewis's claim that the district court erred in denying his motion for judgment of acquittal because there was insufficient evidence to establish that he knowingly and intentionally conspired and aided and abetted others to possess with intent to distribute cocaine and marijuana. "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that

of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *United States v. Calderon,* 127 F.3d 1314, 1324 (11th Cir. 1997) (quotations omitted). "In other words, the question is whether reasonable minds *could* have found guilt beyond a reasonable doubt, not whether reasonable minds *must* have found guilt beyond a reasonable doubt." *United States v. Ellisor*, 522 F.3d 1255, 1271 (11th Cir. 2008). In conducting sufficiency review, we will not consider testimony incredible as a matter of law unless it cannot, on its face, be believed, like where the witness could not have observed certain events or they are contrary to the laws of nature. *United States v. Thompson*, 422 F.3d 1285, 1291 (11th Cir. 2005).

To convict a defendant of possession of a controlled substance with intent to distribute under 21 U.S.C. § 841(a)(1), the government had to establish three elements: (1) knowledge; (2) possession; and (3) intent to distribute. *United States v. Camacho*, 233 F.3d 1308, 1317 (11th Cir. 2000). "To prove guilt under a theory of aiding and abetting, the [g]overnment must prove: (1) the substantive offense was committed by someone; (2) the defendant committed an act which contributed to and furthered the offense; and (3) the defendant intended to aid in its commission." *Id*.

To sustain a conviction for conspiracy to distribute drugs in violation of 21 U.S.C. § 846, the government must prove that: (1) an agreement existed between two or more people to distribute the drugs; (2) that the defendant at issue knew of the conspiratorial goal; and (3) that he knowingly joined or participated in the illegal

venture. *Reeves*, 742 F.3d at 497. "[P]articipation in a criminal conspiracy need not be proved by direct evidence; a common purpose or plan may be inferred from a development and collocation of circumstances." *Id.* (quotations omitted).

Additionally, "where there are repeated transactions between participants buying and selling large quantities of illegal drugs, that may be sufficient to find the participants were involved in a single conspiracy to distribute those drugs." *Id.* A defendant "may be found guilty of participating in a conspiracy if the evidence demonstrates that he was aware of its essential nature, even if he did not know all its details or played only a minor role in the overall scheme." *Id.* (quotations omitted). Thus, "[t]he government need not prove that a defendant participated in every stage of the conspiracy or had direct contact with each of the other alleged co-conspirators." *Id.* at 498.

Here, the district court did not err in denying Lewis's motion for judgment of acquittal because a reasonable trier of fact could find him guilty of conspiring to possess and aiding and abetting the possession of marijuana and cocaine with intent to distribute. At trial, among other things, coconspirator Flowers testified that Lewis had approached Flowers to ask him to transport items for Lewis from Phoenix to Tampa, offering to pay Flowers $25,000, which was about 5 times the going rate; that Lewis had paid Flowers three times to use his company to ship drugs from Phoenix to Tampa; that Lewis had been at the warehouse in Phoenix when the drugs arrived and Lewis had picked up the drugs after they had

arrived at the warehouse in Tampa; that the first two shipments contained marijuana but the third shipment also included cocaine, five kilograms of which Lewis had instructed Flowers to give or "front" to another man, Roger Grace, who was to pay Lewis directly; and that, on February 24, 2017, Lewis and Flowers had taken the marijuana and cocaine from Flowers's Tampa warehouse and loaded it into the U-Haul van, Flowers had driven away in the van and had been stopped by the police. Thereafter, he called Lewis and told him that he had been pulled over and still had all the stuff in his van. *See United States v. Broadwell*, 870 F.2d 594, 601 (11th Cir. 1989) ("Testimony of a co-conspirator, even if uncorroborated, is sufficient to support a conviction.").

Aside from Flowers's inculpatory testimony, the jury also learned that law-enforcement officers recovered 15 kilograms of cocaine and 444 kilograms of marijuana from the U-Haul van, that Lewis had returned to the warehouse after Flowers had been stopped and removed another ten kilograms of cocaine, and that the total value of the drugs recovered exceeded $3 million. In addition, the jury heard that Lewis had rented the U-Haul van in which the officers found the large quantities of drugs, and that Webb, the cook from Lewis's restaurant, had shown up to retrieve the Yukon.

In short, Lewis's transaction with Flowers and Grace evinced an illegal agreement between at least two people to distribute the drugs. Further, the large quantity of drugs involved strongly supports the inference that the defendants intended to

distribute those drugs. *See, e.g.*, *United States v. Cruickshank*, 837 F.3d 1182, 1189 (11th Cir. 2016). The jury further heard how Lewis had absconded after being arrested and placed on bail. In fact, Lewis was a fugitive for four years, a fact from which the jury could readily find his consciousness of guilt. *See United States v. Gonzalez*, 834 F.3d 1206, 1217 (11th Cir. 2016) ("[T]he jury also was entitled to consider evidence of Gonzalez's pretrial flight and five years as a fugitive as substantive evidence of her consciousness of guilt of the charged conspiracies.").

Thus, the record contained more than enough evidence that Lewis had the requisite knowledge, possession, and intent to distribute, to support his conviction for possession of controlled substances with intent to distribute, 21 U.S.C. § 841(a)(1) and (b)(1)(B); that Lewis committed an act that contributed to and furthered the possession with intent to distribute a controlled substance and that Lewis intended to aid in the commission of the crime, to support his conviction for aiding and abetting, 21 U.S.C. § 841(b)(1)(A) and (a)(1); and that Lewis had entered into an agreement between at least two people to distribute the drugs, that he knew of the goal of the agreement and that he knowingly joined or participated in the illegal venture, to support his conviction for conspiracy, 21 U.S.C. § 846.

Finally, to the extent Lewis argues that Flowers's testimony should not be given great weight due to credibility issues, we are required to draw reasonable credibility choices in favor of the jury's verdict. *Thompson*, 422 F.3d at 1291. Further, because Flowers

testified about events that he participated in or otherwise observed, his testimony was not contrary to the laws of nature. *Id.* All in all, the evidence supported Lewis's convictions beyond a reasonable doubt, and the district court properly denied his motion for judgment of acquittal.

IV.

Next, we are unconvinced by Lewis's argument that the district court abused its discretion by denying his claim of a marital-communications privilege during his ex-wife's testimony. It is well established that the marital-communications privilege prevents the disclosure of private communications between spouses in the confidence of the marital relationship. *Trammel v. United States*, 445 U.S. 40, 51 (1980). However, this privilege generally applies only to "utterances, and not to acts." *Pereira v. United States,* 347 U.S. 1, 6 (1954).

Here, Lewis was not entitled to the marital-communications privilege when his ex-wife testified. As the record reflects, Lewis's ex-wife Dawn did not testify to any "utterances" exchanged between her and Lewis during their marriage; rather, she testified about a photo he sent her during their marriage after he had absconded. The district court did not clearly err by finding that Dawn's testimony about Lewis's photo was not a communication covered by the privilege. Regardless, even if her testimony had been erroneously admitted, her statement that Lewis's photo indicated that he was in Mexico was harmless -- DEA Agent Danny Fletcher also testified that Lewis left the "Middle District of

Florida" and was eventually found in Mexico in October 2021. *See Rivera*, 944 F.2d at 1567, 1569; *Langford*, 647 F.3d at 1323.

## V.

Nor can we say that the district court abused its considerable discretion by admitting into evidence cocaine and cash recovered during Lewis's arrest in violation of Federal Rule of Evidence 404(b). Under this rule, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. Fed. R. Evid. 404(b)(1). But this evidence "may be admissible for another purposes, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* 404(b)(2).

Moreover, "[c]riminal acts by a coconspirator, if committed as part of or in furtherance of the general conspiracy, are not 'other act' evidence and are properly admissible to demonstrate the scope of the conspiracy." *United States v. Collins*, 779 F.2d 1520, 1532 (11th Cir. 1986). "Such intrinsic evidence may be excluded nonetheless if its probative value 'is substantially outweighed by the danger of unfair prejudice.'" *United States v. Fortenberry*, 971 F.2d 717, 721 (11th Cir. 1992) (citing Fed. R. Evid. 403). The district court's "discretion to exclude evidence under Rule 403 is narrowly circumscribed." *Id.* (quotations omitted). "Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence," and "[t]he balance under the Rule, therefore, should be struck in favor of admissibility." *Id.* (quotations omitted). The term "unfair prejudice,"

means "an undue tendency to suggest decision on an improper basis." *United States v. Kent*, 93 F.4th 1213, 1220 (11th Cir. 2024) (quotations omitted).

Here, the district court did not abuse its discretion by admitting into evidence cocaine and cash that was recovered when Lewis was arrested. For starters, the superseding indictment charged Lewis with offenses that began no later than February 24, 2017. As a result, the cocaine and cash found on June 6, 2017 were evidence of the ongoing conspiracy that Lewis was charged with committing, and that evidence did not qualify as extrinsic evidence under Rule 404(b). Fed. R. Evid. 404(b); *Collins*, 779 F.2d at 1532. Additionally, the cocaine and cash were part of the charged conspiracy and relevant to proving the extent of Lewis's role in the conspiracy, so we cannot say that the probative value was substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403; *Fortenberry*, 971 F.2d at 721; *Reeves*, 742 F.3d at 497.

## VI.

We are also unpersuaded by Lewis's argument that the district court erred by admitting a certificate from the Florida Department of Revenue into evidence because the certificate contained testimonial hearsay in violation of the Confrontation Clause of the Sixth Amendment. The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. The Confrontation Clause "bars the admission of the testimonial statements of a witness who did not appear at trial unless the

witness was unavailable and the defendant had a prior opportunity to cross-examine him or her." *Wilson*, 788 F.3d at 1316 (quotations omitted); *see also Crawford v. Washington,* 541 U.S. 36, 53–54 (2004).

"Testimony is a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Wilson*, 788 F.3d at 1316 (quotations omitted). "Testimonial statements are ones that declarants would reasonably expect to be used prosecutorially." *Id.* (quotations omitted). Therefore, "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[] fall within the core class of testimony." *Id.* (quotations omitted).

"Certain statements by their nature are not testimonial," like business records. *Id.* (quotations omitted and alterations adopted). "Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because -- having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial -- they are not testimonial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009). Therefore, regardless of whether they qualify as business or official records, when statements are specifically prepared for use at a defendant's trial, those statements are testimony against the defendant, and the declarant of those statements is subject to confrontation. *See id.* Furthermore, the defendant's ability to subpoena the declarant "is no substitute for the right of confrontation." *Id.*

18                    Opinion of the Court                    22-12938

Even if a defendant's Sixth Amendment rights were violated, we are required to consider whether the error was harmless. *United States v. Gari*, 572 F.3d 1352, 1362 (11th Cir. 2009). "The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). "In making this determination, factors to be considered are: the importance of the uncross-examined statements in the prosecution's case, whether those statements were cumulative, the presence or absence of evidence corroborating or contradicting the testimonial statement on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case." *Gari*, 572 F.3d at 1363. We ask "whether the minds of an average jury would have found the prosecution's case less persuasive if the erroneously admitted evidence had been excluded." *Id.* (quotations omitted).

At Lewis's trial, the government introduced a certificate from the custodian of records for the Florida Department of Revenue attesting that the custodian did not find that Lewis had reported any wage and hour information to the department. This search had been performed in response to a subpoena from DEA Agent Fletcher to investigate Lewis's income. So, as the government concedes, it amounted to testimonial hearsay. *See Melendez-Diaz*, 557 U.S. at 324; *Wilson*, 788 F.3d at 1316.

But even so, the error in admitting the certificate was harmless beyond a reasonable doubt. *See Van Arsdall*, 475 U.S. at 684; *Gari*, 572 F.3d at 1362. At trial, Lewis was able to cross-examine Agent Fletcher and establish that business owners like himself would not necessarily receive wages because they could have unreportable sources of income. This is especially true for Lewis, who admits he was a restaurant owner whose income was derived from business profits rather than wages.

Moreover, even if the certificate had been excluded, we've already detailed ample other evidence of Lewis's guilt -- including that Lewis had arranged to ship drugs from Phoenix to Tampa three times, had helped load 15 kilograms of cocaine and 444 kilograms of marijuana into the U-Haul van he had rented, and had placed 10 kilograms of cocaine in the Yukon before abandoning it. All told, witness testimony established that Lewis had thousands of dollars to pay his coconspirator Flowers for drug shipments, as well as thousands of dollars found in cars connected to Lewis's involvement in the conspiracy. Accordingly, the evidence presented in the certificate was not essential to the government's case, and its admission amounted, at most, to harmless error.

## VII.

We likewise are unconvinced by Lewis's claim that the district court clearly erred at sentencing when it found that he was an organizer or leader of the conspiracy for the purposes of applying a 4-level enhancement pursuant to U.S.S.G. § 3B1.1(a). The Guidelines prescribe a four-level enhancement for a defendant who was

an organizer or leader of a criminal activity that involved either (1) five or more participants or (2) was otherwise extensive. U.S.S.G. § 3B1.1(a). In other words, the enhancement may only be applied if the government proves the defendant was *both* an organizer or a leader *and* the offense involved five or more participants or was otherwise extensive. *United States v. Martinez*, 584 F.3d 1022, 1026 (11th Cir. 2009). The government carries the burden to prove the existence of an aggravating role by a preponderance of the evidence. *Shabazz*, 887 F.3d at 1222.

Section 3B1.1 requires "evidence that the defendant exerted some control, influence or decision-making authority over another participant in the criminal activity." *Martinez*, 584 F.3d at 1026. We examine whether a defendant was an organizer or leader, as compared to a manager or supervisor, by considering the following: "(1) exercise of decision making authority, (2) the nature of participation in the commission of the offense, (3) the recruitment of accomplices, (4) the claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority exercised over others." *Id.* (quotations omitted). There is no requirement that all these circumstances be present for the enhancement to apply. *Id.* However, the district court should determine that the facts the government proves, including the undisputed facts from the presentence investigation report ("PSI"), should establish, standing alone or in concert, at least one of the seven factors. *See id.* at 1027–28.

A "participant" is "a person who is criminally responsible for the commission of the offense, but need not have been convicted." *United States v. Zitron*, 810 F.3d 1253, 1261 (11th Cir. 2016) (quotations omitted) (citing U.S.S.G. § 3B1.1). In assessing whether an individual is "criminally responsible," we may consider any of his acts directed by the defendant that were "part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.* at 1261–62 (quotations omitted). It is enough if an individual knowingly participates in the criminal conduct. *Id.* at 1262. The defendant may also be considered one of the participants in counting the number of participants involved in the offense. *See United States v. Duperval*, 777 F.3d 1324, 1337 (11th Cir. 2015).

Here, the district court did not clearly err by finding that Lewis was an organizer or leader of a conspiracy for the purposes of applying a 4-level enhancement pursuant to § 3B1.1(a). First, the court did not clearly err by finding that the conspiracy involved five or more participants because there was evidence that at least five named participants -- Flowers, Lewis, Webb, Grace, and another man named "Friday" -- and several other unnamed men were involved in the extensive shipments of the drugs from Phoenix to Tampa. *Zitron*, 810 F.3d at 1261–62; *Duperval*, 777 F.3d at 1337.

Second, the district court did not clearly err by finding that Lewis was an organizer or leader because he exerted some decision-making authority over at least one participant -- Flowers. *Martinez*, 584 F.3d at 1026–28. The evidence showed that: (1) Lewis recruited Flowers by approaching Flowers and offering to pay him

$25,000 to use his warehouse and route for the shipments; (2) Lewis paid Flowers $18,000 for the first shipment and he paid Flowers $25,000 for the second shipment; and (3) Lewis also instructed Flowers to remove five kilograms of cocaine to give to Grace and collected $20,000 from Webb on Lewis's behalf.  Thus, the district court did not clearly err by finding that Lewis was an organizer or leader of a conspiracy for the purposes of applying a 4-level enhancement pursuant to § 3B1.1(a).  *Shabazz*, 887 F.3d at 1222.

## VIII.

We also find no merit to Lewis's claim -- raised for the first time on appeal -- that the district court plainly erred by applying a 2-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1.  The Guidelines provide that a defendant's offense level can be enhanced by two levels if: (1) he willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to an investigation, prosecution, or sentencing of his instant offense; and (2) his obstructive conduct related to his offense of conviction and any relevant conduct, or a closely related offense.  *Guevara*, 894 F.3d at 1311; U.S.S.G. § 3C1.1.  Additionally, "a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes." *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006).  Similarly, the "failure to object to a district court's factual findings precludes the argument that there was error in them." *Id.*

Here, the district court did not plainly err by applying the 2-level enhancement for obstruction of justice based on Lewis

absconding from pretrial supervision. Notably, Lewis did not object to the facts in the PSI relaying that he absconded from pretrial supervision on September 21, 2017, and that he failed to appear for judicial proceedings until he was arrested four years later on August 31, 2021. Therefore, Lewis admitted to those facts for sentencing purposes, precluding any argument that there was error in them. *Id.* In any event, there is no controlling precedent from the Supreme Court or our Court establishing that it was error to apply an obstruction of justice enhancement when the defendant absconds from pretrial supervision. *See Guevara*, 894 F.3d at 1311; *Ramirez-Flores*, 743 F.3d at 822; U.S.S.G. § 3C1.1. Thus, Lewis has failed to establish that the district court plainly erred in this respect.

IX.

Finally, Lewis has not established that his total sentence of 240 months' imprisonment is substantively unreasonable. In reviewing the "'substantive reasonableness of [a] sentence imposed under an abuse-of-discretion standard,'" we consider the "'totality of the circumstances.'" *Pugh*, 515 F.3d at 1190 (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). The district court must impose a sentence "sufficient, but not greater than necessary to comply with the purposes" listed in 18 U.S.C. § 3553(a).[2] The court

---

[2] The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational

must consider all of the § 3553(a) factors, but it may give greater weight to some factors over others -- a decision that is within its sound discretion. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015). The district court is not required to discuss each of the § 3553(a) factors, and an acknowledgement that it has considered the § 3553(a) factors will suffice. *United States v. Turner*, 474 F.3d 1265, 1281 (11th Cir. 2007).

However, a sentence may be substantively unreasonable when a court unjustifiably relies on any single § 3553(a) factor, fails to consider pertinent § 3553(a) factors, bases the sentence on impermissible factors, or selects the sentence arbitrarily. *Pugh*, 515 F.3d at 1191–92. A sentence that suffers from one of these symptoms is not *per se* unreasonable; rather, we must examine the totality of the circumstances to determine the sentence's reasonableness. *Id*. at 1192. "[W]e will not second guess the weight (or lack thereof) that the [court] accorded to a given [§ 3553(a)] factor . . . as long as the sentence ultimately imposed is reasonable in light of all the circumstances presented." *United States v. Snipes*, 611 F.3d 855, 872 (11th Cir. 2010) (quotations and emphasis omitted). We will vacate a sentence only if we are left with the "definite and firm" conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that

---

training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

is outside the range of reasonable sentences dictated by the facts of the case. *Pugh*, 515 F.3d at 1191 (quotations omitted).

The party challenging the sentence bears the burden of demonstrating that the sentence is unreasonable in light of the record, the factors listed in 18 U.S.C. § 3553(a), and the substantial deference afforded sentencing courts. *Rosales-Bruno*, 789 F.3d at 1256. We ordinarily expect a sentence within the Guidelines range to be reasonable, and a sentence imposed well below the statutory maximum penalty is an indicator of a reasonable sentence. *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).

Here, Lewis's 240-month sentence was not substantively unreasonable. The district court expressly said that it considered the § 3553(a) factors during Lewis's sentencing and explained that it weighed his difficult upbringing and the statements from his family against the nature and circumstances of his offenses, including the large quantity of drugs involved, the fact that he had absconded, and his refusal to admit responsibility. In so doing, the court demonstrated that it properly considered the relevant § 3553(a) factors, and to the extent it gave less weight to the mitigating factors, it was well within the court's discretion to do so. Furthermore, Lewis's total sentence of 240 months' imprisonment was at the low end of the 235-to-293-month Guidelines range and well below the statutory maximum of life imprisonment. *Gonzalez*, 550 F.3d at 1324. On this record, he has not shown that his sentence is substantively unreasonable.

**AFFIRMED.**