**NOT FOR PUBLICATION**

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 25-11198
Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

BETSY ALEXANDRA CACHO MEDINA,

*Defendant-Appellant.*

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:24-cr-20403-CMA-1

_____

_____

No. 25-11220
Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

RODNEY CHOUTE,

                                        *Defendant-Appellant.*

——————————————

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:24-cr-20403-CMA-2

——————————————

Before JILL PRYOR, BLACK, and WILSON, Circuit Judges.

PER CURIAM:

In this consolidated appeal, codefendants Betsy Cacho Medina and Rodney Choute appeal their sentences. Cacho Medina and Choute argue that the district court erred in the calculation of their guideline ranges and that their sentences are substantively unreasonable. Specifically, Cacho Medina argues that the district court erred by applying aggravating-role and sophisticated-means enhancements to her guideline offense level, and Choute argues that the district court erred by applying a sophisticated-means enhancement to his guideline offense level.

After review,[1] we affirm Cacho Medina's sentence, vacate Choute's sentence, and remand Choute's case for further proceedings consistent with this opinion.

——————————————

[1] "We review a district court's interpretation of the Sentencing Guidelines and application of the Guidelines to the facts de novo, and we review the district court's findings of fact for clear error." *United States v. Dimitrovski*, 782 F.3d

## I. DISCUSSION

### A. Aggravating-Role Enhancement

Under U.S.S.G. § 3B1.1(c), a district court must increase a defendant's offense level by two points "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity." U.S.S.G. § 3B1.1(c).  We have "upheld a § 3B1.1 enhancement when the convicted defendant had decision-making authority and exercised control" over another participant in the criminal activity. *United States v. Ramirez*, 426 F.3d 1344, 1355 (11th Cir. 2005) (quotation marks omitted).  The enhancement is not appropriate if the defendant merely acted "in concert" with her co-conspirators. *United States v. Martinez*, 584 F.3d 1022, 1028 (11th Cir. 2009).

The district court did not clearly err by applying the aggravating-role enhancement to Cacho Medina.  *See id.* at 1025 ("We review a district court's determination that a defendant is subject to a Section 3B1.1 role enhancement as an organizer or leader for clear error.").

The nature of the fraud scheme underlying this case was that the codefendants obtained victims' personal identifying information, including social security numbers, and used that information to fraudulently apply for unemployment-insurance benefits

---

622, 628 (11th Cir. 2015).  "We review the substantive reasonableness of a sentence for an abuse of discretion." *United States v. Osorio-Moreno*, 814 F.3d 1282, 1287 (11th Cir. 2016).

in the victims' names from many different states. The codefendants did this using multiple email addresses. They also used the former residence of one of the codefendants, Kimberly Johnson, as the mailing address for the unemployment applications.

The district court concluded that Cacho Medina held a leadership role in this scheme based on the following facts: (1) law enforcement found during a search of Cacho Medina and Choute's shared residence a notebook containing the personal identifying information of victims that they used to fraudulently obtain the unemployment benefits, devices saved with the email addresses that were used to perpetrate the fraud, and mail relating to the unemployment benefits; (2) Johnson stated to law enforcement that Cacho Medina used Johnson's prior residence to receive mail relating to the scheme, and that Johnson delivered that mail to Cacho Medina;[2] and (3) Cacho Medina texted co-conspirator Nelson Garcia

---

[2] Cacho Medina argues that the district court could not rely on Johnson's statement because it is unreliable hearsay. We disagree. The district court could rely on Johnson's statement—which was included in Cacho Medina's guilty-plea factual proffer and in the presentence investigation report without objection—because it bears sufficient indicia of reliability. *See United States v. Baptiste*, 935 F.3d 1304, 1315 (11th Cir. 2019). Johnson's statement is consistent with the information in Cacho Medina's guilty-plea factual proffer that the codefendants used Johnson's prior address to receive mail relating to the unemployment benefits, and that Johnson delivered that mail to Cacho Medina. The undisputed portion of the presentence investigation report also confirmed that law enforcement found letters and debit cards from state unemployment agencies in Cacho Medina and Choute's shared residence. *See United States v. Smith*, 480 F.3d 1277, 1281 (11th Cir. 2007) (explaining that

Medina the user name and password to one of the email accounts used to apply for the unemployment benefits and instructed Garcia Medina, "check the status."

This evidence indicates that Cacho Medina at the very least asserted influence over and instructed Johnson and Garcia Medina in the fraud scheme. That is sufficient to qualify Cacho Medina for the § 3B1.1(c) enhancement. *See United States v. Jiminez*, 224 F.3d 1243, 1251 (11th Cir. 2000) ("[T]he assertion of control or influence over only one individual is enough to support a § 3B1.1(c) enhancement."); *United States v. Lozano*, 490 F.3d 1317, 1323 (11th Cir. 2007) (upholding § 3B1.1(c) enhancement where defendant instructed a co-conspirator to engage in criminal activity and was "intricately involved in the offense" even though "he did not have any decision-making authority"); *United States v. Ndiaye*, 434 F.3d 1270, 1304 (11th Cir. 2006) (upholding § 3B1.1 enhancement where the defendant "exercised authority over the [criminal] organization by recruiting and instructing co-conspirators").

B. *Sophisticated-Means Enhancement*

Under U.S.S.G. § 2B1.1(b)(10)(C), a district court must increase a defendant's offense level by two points if "the offense . . . involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means." U.S.S.G. § 2B1.1(b)(10)(C). In determining whether to apply the

---

a district court at sentencing may rely on undisputed statements in a presentence investigation report).

sophisticated-means enhancement, a district court must consider both whether (1) the overall offense involved sophisticated means, and (2) the defendant herself intentionally engaged in or caused the conduct constituting sophisticated means. *United States v. Buchanan*, 146 F.4th 1342, 1357 (11th Cir. 2025).

Cacho Medina and Choute argue that the district court erred by imposing the sophisticated-means enhancement because (1) the overall fraud scheme was not sophisticated, and (2) the court failed to specifically find that they individually engaged in or caused the conduct constituting sophisticated means.

For the reasons below, the district court did not clearly err in concluding that the overall fraud scheme was sophisticated. *See United States v. Sosa*, 777 F.3d 1279, 1300 (11th Cir. 2015) ("We review for clear error . . . [a district court's] finding that the offense involved sophisticated means."). However, we agree with Cacho Medina and Choute that the district court erred by failing to make specific findings about whether they individually engaged in or caused conduct constituting sophisticated means.

Nevertheless, we still must consider whether, despite the district court's error, there was sufficient evidence to support the application of the sophisticated-means enhancement as to both defendants. *See United States v. Uscinski*, 369 F.3d 1243, 1246 (11th Cir. 2004) ("To permit meaningful appellate review, a district court should make specific findings of fact when [imposing a sentencing enhancement], . . . [b]ut a remand is unnecessary if the record clearly reflects the basis for enhancement."); *United States v. Bradley*,

644 F.3d 1213, 1293 (11th Cir. 2011) (explaining that, although "a district court should make explicit factual findings that underpin its sentencing decision, . . . failure to make specific findings does not preclude appellate review where the court's decisions are based on clearly identifiable evidence"). Because there was sufficient evidence to find that Cacho Medina engaged in or caused conduct constituting sophisticated means, we affirm the application of the enhancement as to her. On the other hand, because there was insufficient evidence to support the enhancement as to Choute, we vacate his sentence and remand for further proceedings.

### 1. Overall Scheme

"'Sophisticated means' refers to 'especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense,' and ordinarily includes conduct such as hiding assets or transactions through the use of fictitious entities, corporate shells, or offshore financial accounts." *United States v. Moran*, 778 F.3d 942, 977 (11th Cir. 2015) (quoting U.S.S.G. § 2B1.1, cmt. n.9(B)). We have stated that a fraud scheme was sophisticated when it "involved repetitive, coordinated conduct designed to allow [the defendant] to execute his fraud and evade detection." *United States v. Bane*, 720 F.3d 818, 827 (11th Cir. 2013). "There is no requirement that each of a defendant's individual actions be sophisticated in order to impose the enhancement. Rather, it is sufficient if the totality of the scheme was sophisticated." *United States v. Ghertler*, 605 F.3d 1256, 1267 (11th Cir. 2010).

As stated above, the defendant's fraud scheme involved obtaining victims' personal identifying information, including social security numbers, and using that information to fraudulently obtain unemployment benefits from multiple states.  The defendants obtained the personal identifying information of thirty-three separate victims without their knowledge or permission, submitted at least forty-seven unemployment-benefits applications using multiple different email addresses to sixteen different states, and used one of the defendants' prior residences as a mailing address.  The defendants engaged in this scheme over the course of approximately five months and fraudulently obtained a total of $169,825 in unemployment benefits.  As the district court noted, law enforcement only happened to discover the defendants' scheme approximately a year later while investigating an unrelated fraud scheme that the defendants were engaged in.

While none of the individual actions making up the scheme were necessarily sophisticated, the record evidence supports the district court's conclusion that the overall scheme was sophisticated because it "involved repetitive, coordinated conduct" that allowed the defendants to avoid detection for an extended period of time.  *See Bane*, 720 F.3d at 827.  "[T]he length of the scheme and the loss inflicted by it" are highly relevant in this case.  *See United States v. Feaster*, 798 F.3d 1374, 1381 (11th Cir. 2015) ("Regardless of whether the defendant undertook affirmative acts of concealment, the scheme itself may be designed in a sophisticated way that makes it unlikely to be detected, allowing it to continue for an extended period and to impose larger losses.").

The fraud scheme in this case has a similar level of complexity to the schemes in cases where we upheld the application of a sophisticated-means enhancement. For example, in *United States v. Presendieu*, we upheld a sophisticated-means enhancement for a fraud scheme where the defendant (1) procured checks payable to others through companies that filed fraudulent tax returns, and (2) acquired false identification in order to cash the checks. 880 F.3d 1228, 1248-49 (11th Cir. 2018). Additionally, in *United States v. Campbell*, we upheld a sophisticated-means enhancement for a scheme where the defendant politician "utilized campaign accounts and credit cards issued to other people to conceal cash expenditures" for the purpose of tax fraud. 491 F.3d 1306, 1315-16 (11th Cir. 2007).

For the above reasons, there was sufficient evidence to support the district court's conclusion that the defendants' overall scheme was sophisticated. Therefore, the district court did not clearly err on this ground.

### 2. Cacho Medina

However, as is discussed above, to impose the sophisticated-means enhancement as to Cacho Medina, the district court was required to specifically find that Cacho Medina herself "intentionally engaged in or caused the conduct constituting sophisticated means." *See* U.S.S.G. § 2B1.1(b)(10)(C); *Buchanan*, 146 F.4th at 1357. The district court made no such finding in this case. Ra-

ther, the district court merely based its application of the enhancement on its conclusion that the overall scheme was sophisticated. That was error.

Yet when a district court errs by failing to make necessary factfindings in imposing a sentence enhancement, we will not remand "if the record clearly reflects the basis for enhancement." *See Uscinski*, 369 F.3d at 1246; *Bradley*, 644 F.3d at 1293. In this case, despite the district court's error, we affirm the application of the sophisticated-means enhancement as to Cacho Medina because the record supports the conclusion that Cacho Medina intentionally engaged in or caused the conduct constituting sophisticated means.

As we already stated, the district court did not clearly err by concluding that Cacho Medina held a leadership role in the fraud scheme because there was evidence that she instructed and held influence over other codefendants and possessed materials necessary to the effectuation of the scheme in her home. Considering that the district court also did not clearly err in finding that the overall fraud scheme was sophisticated, Cacho Medina must have intentionally engaged in or caused the conduct constituting sophisticated means by virtue of her leadership role in the scheme. Even if there is no evidence as to whether Cacho Medina herself performed specific actions necessary to the scheme, such as filing the unemployment applications or obtaining the victims' personal identifying information, she necessarily caused those actions to happen as leader through her instructions to her codefendants.

This conclusion is supported by *United States v. Bell*, in which we upheld a sophisticated-means enhancement where the district court properly found that (1) the defendant's overall fraud scheme was sophisticated, and (2) the defendant "was an organizer and leader of the criminal activity." 112 F.4th 1318, 1342 (11th Cir. 2024). We explained that those two findings were "sufficient to support the application of" the sophisticated-means enhancement. *Id.* So too are the district court's findings here.

Cacho Medina's case is distinct from *Buchanan*. In *Buchanan*, we vacated the application of a sophisticated-means enhancement as to a defendant who only held a minor role in the check fraud scheme that was the basis for his conviction where the district court did not make any individualized factfindings as to the defendant and instead focused on the overall nature of the scheme. 146 F.4th at 1356-58. The record evidence indicated that the individual defendant's only action in furtherance of the scheme was to cash counterfeited checks. *Id.* at 1356. The evidence also indicated that the defendant was only a "worker" in the scheme, and the only "concealment" that he engaged in was to place superglue on his fingers to ensure that his fingerprints were not transferred onto the checks he cashed. *Id.* at 1356-57. We concluded that the district court erred in applying the sophisticated-means enhancement to this defendant because, even if the overall scheme was sophisticated, the record evidence indicated that the defendant individually did not engage in overly complex conduct. *Id.* at 1358.

Unlike *Buchanan*, Cacho Medina did not have a minor role in the underlying fraud scheme and did not simply engage in one narrow aspect of the scheme. Rather, as the district court properly found, Cacho Medina held a leadership role in the scheme and directed other codefendants in various aspects of the scheme. That is enough to qualify her for the sophisticated-means enhancement. *See Bell*, 112 F.4th at 1342. Thus, even though the district court failed to consider whether Cacho Medina herself engaged in or caused conduct constituting sophisticated means, there is sufficient record evidence for us to uphold the application of the enhancement as to her. *See Uscinski*, 369 F.3d at 1246; *Bradley*, 644 F.3d at 1293.

### 3. *Choute*

Like with Cacho Medina, the district court also did not make any specific findings as to whether Choute himself "intentionally engaged in or caused the conduct constituting sophisticated means." *See* U.S.S.G. § 2B1.1(b)(10)(C); *Buchanan*, 146 F.4th at 1357. At Choute's sentencing hearing, the district court did not discuss Choute's individual conduct and instead appeared to rely on its factfindings relating to the sophistication of the overall scheme from Cacho Medina's sentencing hearing, which was held mere minutes before Choute's.

Unlike with Cacho Medina, however, there is insufficient record evidence such that we can uphold the sophisticated-means enhancement as to Choute. That is because there is insufficient

record evidence establishing whether Choute intentionally engaged in or caused the conduct constituting sophisticated means in the underlying fraud scheme.

The only evidence before the district court about Choute's individual actions within the underlying fraud scheme were that (1) Choute lived at the same residence as Cacho Medina where law enforcement located the evidence relating to the unemployment-benefits fraud, and (2) Choute sent codefendant Garcia Medina a message instructing him how to apply for a "Payment Protection Program" loan, which was unrelated to the unemployment-benefits fraud scheme. Aside from this highly circumstantial evidence, there was no concrete evidence indicating what specific actions Choute individually took in the unemployment-benefits fraud scheme. All of the statements in Choute's guilty-plea factual proffer and presentence investigation report described actions that the codefendants took collectively and did not specifically explain what actions in furtherance of the scheme Choute individually engaged in or caused. In fact, because of the lack of concrete evidence as to Choute's individual actions or role in the scheme, the district court rejected the application of an aggravating-role enhancement to Choute's offense level.

Given this lack of evidence, the record does not support the conclusion that Choute himself "intentionally engaged in or caused the conduct constituting sophisticated means." *See* U.S.S.G. § 2B1.1(b)(10)(C); *Buchanan*, 146 F.4th at 1357. It is possible that Choute, like the defendant in *Buchanan*, held merely a minor role

in the underlying fraud scheme and was only responsible for certain aspects of the scheme that were not overly complex. Without any evidence indicating what role Choute held in the scheme or what specific actions he individually took in furtherance of the scheme, we cannot determine whether the sophisticated-means enhancement is warranted as to him. As such, the government failed to satisfy its burden in support of the enhancement. *See United States v. Askew*, 193 F.3d 1181, 1183 (11th Cir. 1999) ("The Government bears the burden of establishing by a preponderance of the evidence the facts necessary to support a sentencing enhancement.").

Thus, like in *Buchanan*, we vacate the district court's application of the sophisticated-means enhancement as to Choute and remand for the district court to determine whether Choute "engaged in or caused the conduct constituting sophisticated means."[3] *See* 146 F.4th at 1358.

## C. *Substantive Reasonableness*

Lastly, Cacho Medina argues that her sentence is substantively unreasonable because (1) the district court failed to consider the need to avoid unwarranted sentencing disparities between her and her codefendants, in particular Choute, and (2) the district court failed to consider her mitigating evidence relating to her traumatic youth and serious medical conditions. We disagree.

---

[3] Because we vacate Choute's sentence based on the sophisticated-means issue, we do not reach his substantive-reasonableness argument.

First, the district court did not abuse its discretion by creating unwarranted sentencing disparities between Cacho Medina and her codefendants. *See* 18 U.S.C. § 3553(a)(6) (stating that, in sentencing a defendant, the district court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"). The district court did not create an unwarranted sentencing disparity between Cacho Medina and her codefendants because Cacho Medina is not similarly situated to any of her codefendants. *See United States v. Azmat*, 805 F.3d 1018, 1048 (11th Cir. 2015) ("[T]here can be no 'unwarranted' sentencing disparities among codefendants who are not similarly situated."); *United States v. Docampo*, 573 F.3d 1091, 1101-02 (11th Cir. 2009) ("A well-founded claim of disparity . . . assumes that apples are being compared to apples."). Unlike her codefendants, Cacho Medina received an aggravating-role enhancement and had a criminal history category of IV, while Choute and Johnson had criminal history categories of II, and Garcia Medina had a criminal history category of I. *See United States v. Johnson*, 980 F.3d 1364, 1386 (11th Cir. 2020) (concluding that codefendants were not similarly situated where they had different criminal history categories and were subject to different sentencing enhancements).

Second, the district court did not fail to properly consider Cacho Medina's mitigating evidence. At Cacho Medina's sentencing hearing, the district court explained that it was taking into consideration Cacho Medina's history and characteristics, including the significant abuse she suffered during her youth, which the court

described as "compelling." The district court also discussed Cacho Medina's health problems. The court noted it was not considering Cacho Medina's need for further medical care because after sentencing Cacho Medina was going to be released into state custody based on other criminal charges, and the state court judge had made clear that Cacho Medina would receive the necessary medical care.

Based on these facts, it is clear that the district court did in fact consider Cacho Medina's mitigating evidence. Even if the court did not explain its consideration of all of the mitigating evidence in great detail, it did not need to. *See United States v. Butler*, 39 F.4th 1349, 1356 (11th Cir. 2022) ("A district court's failure to discuss mitigating evidence does not indicate that the court erroneously ignored or failed to consider the evidence. . . . Rather, a district court's acknowledgment that it has considered the § 3553(a) factors and the parties' arguments is sufficient." (citation modified)).

Further, the district court did not abuse its discretion in its weighing of Cacho Medina's mitigating evidence against the other sentencing factors. We must afford great deference to the district court's weighing of the § 3553(a) factors. *See United States v. Irey*, 612 F.3d 1160, 1191 (11th Cir. 2010) (*en banc*) ("A district court's sentence need not be the most appropriate one, it need only be a reasonable one. We may set aside a sentence only if we determine, after giving a full measure of deference to the sentencing judge, that the sentence imposed truly is unreasonable."); *Butler*, 39 F.4th

at 1355 ("In reviewing the reasonableness of a sentence, we will not substitute our own judgment for that of the sentencing court and we will affirm a sentence so long as the court's decision was in the ballpark of permissible outcomes." (quotation marks omitted)). The district court's decision to impose a within-guideline sentence, taking into account the seriousness of the offense, the need for deterrence, and the mitigating evidence, was well within its discretion. The fact that Cacho Medina's sentence was within her guideline range indicates that it is reasonable. *See United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008) ("Although we do not automatically presume a sentence within the guidelines range is reasonable, we ordinarily expect a sentence within the Guidelines range to be reasonable." (citation modified)).

For these reasons, the district court did not abuse its discretion in sentencing Cacho Medina to 89 months' imprisonment.

## II. CONCLUSION

The district court did not clearly err by imposing an aggravating-role enhancement as to Cacho Medina. The district court did not clearly err by concluding that Cacho Medina and Choute's overall fraud scheme was sophisticated. However, the district court erred by failing to make findings as to whether Cacho Medina and Choute individually engaged in or caused conduct constituting sophisticated means. Nevertheless, in Cacho Medina's case, there is sufficient record evidence indicating that she personally engaged in or caused conduct constituting sophisticated means, so the dis-

trict court did not reversibly err by imposing the sophisti-cated-means enhancement as to her.  The same is not true for Choute, so we must vacate Choute's sentence and remand for the district court to conduct further factfinding as to Choute's individual actions in the fraud scheme.  Lastly, Cacho Medina's sentence is substantively reasonable.

Accordingly, we **AFFIRM** Cacho Medina's sentence, **VACATE** Choute's sentence, and **REMAND** Choute's case for further proceedings consistent with this opinion.